**FALCON RICE MILL, INC.,**
**Plaintiff-Appellant,**

v.

**COMMUNITY RICE MILL, INC. and**
**James Vidrine, Defendants-Appellees.**

No. 82–4451.

United States Court of Appeals,
Fifth Circuit.

Feb. 21, 1984.

---

L. Lawton Rogers, III, Joseph M. Killeen, Arlington, Va., for plaintiff-appellant.

J. Winston Ardoin, Eunice, La., for defendants-appellees.

Before WISDOM, REAVLEY, and JOHNSON, Circuit Judges.

WISDOM, Circuit Judge:

Falcon Rice Mill (Falcon) brought this suit, alleging that the defendants, Community Rice Mill (Community) and James Vidrine, were guilty of unfair competition and trade dress infringement.[1] Falcon sought to recover damages and to enjoin the defendants from using certain trade dress for their rice. After trial the district court denied the injunction and dismissed all claims on the ground that Falcon had not established a likelihood of confusion. We affirm.

---

1. "'Trade dress' is a concept which embraces the total image of a given product, including advertising materials and marketing techniques used to promote its sale." *John Wright, Inc. v. Casper Corp.,* 1976, E.D.Pa., 419 F.Supp. 292, 317, *rev'd in part on other grounds sub nom. Donsco, Inc. v. Casper Corp.,* 3 Cir.1978, 587 F.2d 602. For an excellent discussion of the protection of trade dress, see Judge Rubin's opinion in *Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.,* 5 Cir.1981, 659 F.2d 695, *cert. denied,* 1982, 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342.

## I.

Falcon, located in Crowley, Louisiana, is the successor of Rice City Milling Co., Inc. Rice City marketed, and Falcon continues to market, its rice in Louisiana and Texas using a variety of packages, including the three packages at issue here.[2]

Falcon sells "HOME COUNTRY" medium grain rice in a white or brown paper bag (Fig. 1). On the front of the bag, in the center, is a large rectangular drawing, in green, brown, and white, of a plantation house shaded by a large, moss-laden oak tree. Above this drawing are the words "HOME COUNTRY" in large green capital letters. Below the picture are the words "OLD FASHIONED MEDIUM GRAIN" in smaller black capital letters, the word "RICE" in green capital letters, and the name and address of the mill and the net weight of the package, in black capital letters. On the sides of the package, the legend "HOME COUNTRY OLD FASHIONED MEDIUM GRAIN RICE" is repeated in green and black letters.

2. Except for the name of the mill, Falcon's packages are identical with those used by Rice City before June 1, 1981, when Falcon purchased Rice City.

Fig. 1

# HOME COUNTRY

OLD FASHION
MEDIUM GRAIN

## RICE

FALCON RICE MILL, INC.
P.O. DRAWER 771
CROWLEY, LOUISIANA 70526
**NET WT. 10 LBS.**

Falcon also sells medium grain rice under the "ED'S" label (Fig. 2).[3] This rice is sold in clear plastic bags. In the center of the bag is·a map, in dark blue, of the State of Louisiana. The word "LOUISIANA" in white capital letters runs diagonally across the state. A white star and the word "CROWLEY" indicate the location of the mill. Wavy red and white lines below the state represent the Gulf of Mexico. To the left of the northwest corner of the map is the word "ED'S" in red letters on a white background. To the right appears the legend "EXTRA FANCY MEDIUM GRAIN" in blue capital letters, the word "rice" in large white lower case letters outlined in red and white, and the net weight in small blue capitals. The legend "ED'S EXTRA FANCY MEDIUM GRAIN RICE" is repeated in red, blue, and white on the sides.

Fig. 2

Falcon sells long grain, or Toro, rice in white paper bags (Fig. 3). The word "TORO", in large orange or red capital letters, appears within a blue oval. Below this, also in orange or red capitals, are the words "LONG GRAIN RICE", the name and address of the mill superimposed on a blue band, and the net weight. ·"TORO LONG GRAIN RICE" appears on the sides and bottom of the package, again with the word "TORO" within a blue oval.

**3.** The photographs reproduced here as Figs. 2–5 were not introduced into evidence but rather were included by Falcon in its appellate brief. Community criticizes Falcon for engaging in "misleading tactics" by including these photographs in its brief when the actual packages were introduced into evidence at trial. Brief for Defendants-Appellees at 5. It would have been more professional for counsel to have introduced the photographs in the record as exhibits, but we cannot see that they prejudiced Community. We find nothing "misleading" about these photographs, and use them because they are accurate, relevant, and helpful to readers of this opinion.

Fig. 3

The individual defendant, James Vidrine, worked as a broker for Rice City until June 1, 1981. At that time, Falcon Rice bought Rice City, and did not employ Vidrine. Shortly thereafter, Vidrine became a broker for Community, located in Mamou, Louisiana, approximately 35 miles north of Crowley. He designed, or participated in the design of, new packages for Community medium and long grain rice, and began calling on many of the same customers he had called on while employed by Rice City.

After Vidrine went to work at Community Rice, the company adopted a new mark, "CAJUN COUNTRY". Vidrine testified that this mark is federally registered and that he purchased the right to use it on rice packages from another food manufacturer. This mark appears in decorative capital letters on both the medium and long grain packages. The medium grain package is a clear plastic bag with a map of Louisiana in green (Fig. 4). The mark "CAJUN COUNTRY" appears above this map in black letters outlined in white. On the map, in black capital letters, are the words "LOUISIANA GROWN" and "LOUISIANA MILLED", a small star in a circle and the word "MAMOU" indicating the mill location. The map rests atop a large, irregularly shaped, dark blue area suggesting the Gulf of Mexico. In this area, in small white capital letters, are the words "OLD FASHION MEDIUM GRAIN RICE". The name and address of the mill and the net weight appear below in black capital letters. Scattered about the face of the package are five oblong yellow shapes with jagged black edges, and the words (in black script lettering) "Boudin", "Gumbo", "Etouffe", "Rice Dressing", "Sauce Piquante", and "Jambalaya". The legend "CAJUN COUNTRY OLD FASHION MEDIUM GRAIN RICE" appears in black on the sides of the package, with the words "CAJUN COUNTRY" and "RICE" in the same decorative lettering used on the front of package.

Fig. 4

Community's long grain (Toro) package is also a clear plastic bag (Fig. 5). From top to bottom the front of the package is labeled as follows: "CAJUN COUNTRY" in decorative blue capital letters outlined in white; "LONG GRAIN" in orange capital letters outlined in white; a blue hexagon with the word "TORO" superimposed in orange; "LOUISIANA GROWN LOUISIANA MILLED" in blue capital letters; "RICE" in orange capitals outlined in white; the net weight of the rice and name and address of the mill in blue capital letters outlined in white. "CAJUN COUNTRY LONG GRAIN RICE" appears along the sides of the bag.

Fig. 5

Falcon filed its complaint on July 28, 1982, asserting four causes of action: unfair competition violating section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1982); state trademark infringement in violation of La.Rev.Stat.Ann. § 51:222 (West Supp. 1982); unfair competition violating La.Rev. Stat.Ann. § 51:411 (West 1965); and "common law trademark infringement and unfair competition" under Texas law. Except for the Louisiana trademark claim, each cause of action alleged that Community's packages, considered in their entirety, were confusingly or deceptively similar to Falcon's.[4]

4. The state trademark claim alleged infringement of Falcon's registered mark "TORO". This mark was first registered in Louisiana on May 29, 1972; the registration was renewed in 1982. As the district court found, however, and as Falcon concedes, "Toro" is a variety of long-grain rice. Brief for Plaintiff-Appellant at 16. It is therefore a generic term with respect to rice and may not properly be the subject of Louisiana trademark protection. *Vision Center*

■ On September 13, 1982, the district court conducted a hearing on Falcon's application for an injunction. The parties stipulated that this hearing would constitute a trial on the merits. At the end of the trial, the court orally denied the injunction, rendered judgment for defendants, and dismissed the complaint.[5] On October 8, 1982, the court issued a brief memorandum, entitled "Reasons for Judgment", holding that Falcon had failed to establish a likelihood of confusion between its products and Community's products. Falcon appeals.

## II.

■ Although Falcon asserts four causes of action, the underlying issue is the same in each: are Community's packages so similar to Falcon's that they create a likelihood of confusion as to the source of the products?[6] "[T]he basic test under every type of 'unfair competition' is the 'likelihood of confusion' test." *Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc.,* 5 Cir. 1981, 659 F.2d 695, 703, *cert. denied,* 1982, 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342; *accord, Amstar Corp. v. Domino's Pizza, Inc.,* 5 Cir., 615 F.2d 252, 265, *cert.*

*v. Opticks, Inc.,* 5 Cir.1979, 596 F.2d 111, 115–16, *cert. denied,* 1980, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646; La.Rev.Stat.Ann. § 51:212 (5)(1) (West Supp.1983).

5. Before deciding for the defendants on the merits, the district court orally denied the defendants' motion to dismiss for lack of jurisdiction. Community had argued that the court lacked jurisdiction because Falcon had not proved any impact on interstate commerce. This argument is without merit and the district court correctly rejected it. Falcon alleged sales in both Texas and Louisiana. While Community contended that its activities were confined to Louisiana, this contention, if true, would not impair federal jurisdiction. The Lanham Act clearly prohibits infringement, within a single state, of a trademark used in interstate commerce. *World Carpets, Inc. v. Dick Littrell's New World Carpets,* 5 Cir.1971, 438 F.2d 482, 488–89. Moreover, § 43(a) of the Lanham Act explicitly provides that it applies whenever goods violating its provisions "enter into commerce", 15 U.S.C. § 1125(a) (1982); § 45 provides in turn that " 'commerce' means all commerce which may be lawfully regulated by Congress", 15 U.S.C. § 1127 (1982). Without doubt this provision would extend to Community's intrastate activities since they had an impact on Falcon's interstate activities.

Accordingly, the district court had jurisdiction of the Lanham Act claim under § 39 of the Lanham Act, 15 U.S.C. § 1121 (1982), and 28 U.S.C. § 1338(a) (1976), and jurisdiction of the state law claims under 28 U.S.C. § 1338(b) (1976).

6. Likelihood of confusion as to source is the essential ingredient of a federal unfair competition claim under the Lanham Act. *Chevron,* 659 F.2d at 703; *Sun-Fun Prods. v. Suntan Research & Dev., Inc.,* 5 Cir.1981, 656 F.2d 186, 192. The same is true of an unfair competition

claim under Texas common law. *Supreme Assembly, Order of Rainbow for Girls v. J.H. Ray Jewelry Co.,* 5 Cir.1982, 676 F.2d 1079, 1086 n. 10; *Miller v. Lone Star Tavern, Inc.,* 1979, Tex. Civ.App.—Waco, 593 S.W.2d 341, 344. Likelihood of confusion is required explicitly by the Louisiana trademark statute. La.Rev.Stat.Ann. § 51:222(1) (West Supp.1983). The Louisiana unfair competition statutes require a showing of "fraud", but this is tantamount in many cases to likelihood of confusion and in any event at least a likelihood of confusion must be established to show fraud. *T.G.I. Friday's Inc. v. International Restaurant Group, Inc.,* 5 Cir. 1978, 569 F.2d 895, 899; *Straus Frank Co. v. Brown,* 1964, 246 La. 999, 169 So.2d 77; *Huth v. Rosenzweig,* 1946, La.App.Orleans, 27 So.2d 742.

Falcon asserts that unfair competition may be established in the absence of a likelihood of confusion, if other factors are shown. Falcon points to the prior association between Vidrine and Rice City; Vidrine's knowledge of Falcon's trade dress; Community's adoption of a new trademark, "CAJUN COUNTRY", with an allegedly similar meaning to Falcon's "HOME COUNTRY"; Community's adoption of trade dress "with considerable similarity" to Falcon's trade dress; and Vidrine's marketing to the same customers. Falcon relies on *B.H. Bunn v. AAA Replacement Parts Co.,* 5 Cir.1971, 451 F.2d 1254, contending that the Court found unfair competition in that case even though the plaintiff's trademark had not been infringed. This argument misreads the case. The Court, interpreting Florida law, stated explicitly, "The gist of unfair competition ... is 'palming off'." *Id.* at 1262. The Court held that, while the plaintiff's trademark had not been infringed, the defendant's similar mark, in combination with a demonstrated intent to copy, created a likelihood of confusion as to the source of the products. *Id.* at 1264–65.

*denied,* 1980, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129. In this circuit it is well settled that likelihood of confusion is a question of fact and the trial court's determination may be reversed only if clearly erroneous.[7] *Chevron,* 659 F.2d at 703; *Amstar,* 615 F.2d at 257–58; *T.G.I. Friday's, Inc. v. International Restaurant Group, Inc.,* 5 Cir.1978, 569 F.2d 895, 899; *American Foods, Inc. v. Golden Flake, Inc.,* 5 Cir.1963, 312 F.2d 619, 624; *Sears Roebuck & Co. v. All States Life Ins. Co.,* 5 Cir., 246 F.2d 161, 168, *cert. denied,* 1957, 355 U.S. 894, 78 S.Ct. 268, 2 L.Ed.2d 192. If the trial court misapplies the governing legal standards, however, the "clearly erroneous" standard is inapplicable. *Chevron,* 659 F.2d at 703; *Continental Motors Corp. v. Continental Aviation Corp.,* 5 Cir.1967, 375 F.2d 857, 859. Falcon argues that the court's findings in this case are thus tainted and urges us to examine the facts on our own. Our examination of the record convinces us, however, that the district court's opinion shows an understanding and application of the proper legal standards.

Falcon argues first that the district court misconstrued this case as one involving only trademark, not trade dress.[8] The difference is an important one. Falcon concedes that the mark "Toro" is descriptive and that Community's mark "CAJUN COUNTRY" does not per se infringe Falcon's mark "HOME COUNTRY", but argues that the overall appearance of Community's packages is confusingly similar to the overall appearance of Falcon's packages. Falcon points to language in the district court's opinion that, Falcon says, demonstrates that the court misunderstood this distinction. The court used the term "trade dress" only once, in the first sentence of the opinion, and thereafter used the word "trademark". The court also noted that "TORO" is a very weak "trademark", and stated that Falcon desires "to permanently enjoin the use by

defendants of Vidrine's federally registered trademark, 'Cajun Country', as that mark is presently employed on Community's products".

■ Without doubt, the Lanham Act and state law doctrines of unfair competition protect trade dress as well as individual trademarks. *Chevron,* 659 F.2d at 702; *Sun-Fun Products v. Suntan Research & Development, Inc.,* 5 Cir.1981, 656 F.2d 186, 192; *Keebler Co. v. Rovira Biscuit Corp.,* 1 Cir.1980, 624 F.2d 366, 376–77. If the district court had misapprehended the nature of the case, that mistake would plainly be grounds for reversal. A fair reading of the district court's reasoning, however, makes clear that the court fully understood that the case involved trade dress. The court recognized that Falcon sought to enjoin the use of "CAJUN COUNTRY" only "as that mark is presently employed". The court referred to the mark "TORO" in the context of analyzing *all* the marks on Falcon's packages for their strength and descriptiveness. Finally, and most convincingly, the court noted that while "the trademarks . . . contain individual superficial similarities . . . considering the over-all impression conveyed by the designs, the trademarks are not deceptively similar . . . ." The court did understand the nature of the case, and when it found no likelihood of confusion it based that finding on a consideration of the trade dress viewed as a whole.

■ Falcon also argues that the district court misapplied the "likelihood of confusion" standard by requiring Falcon to show confusion of products rather than confusion as to source. Falcon points to the court's statement that "[t]he issue is whether the trademarks employed by defendants create a likelihood of confusion between their products and those of Falcon". Falcon's interpretation of this sentence is a strained

---

**7.** The standard of review is not clearcut elsewhere. *See Elby's Big Boys, Inc. v. Frisch's Restaurants, Inc.,* 1982, 459 U.S. 916, 103 S.Ct. 231, 231, 74 L.Ed.2d 182, 183 (White, J., dissenting from denial of writ of certiorari). Gilson indicates that "likelihood of confusion" is a question of fact in most circuits, but that other circuits either view it as a mixed question

of law and fact or use the clearly erroneous standard to review findings on some of the factors but not others (e.g., similarity of design). 1 J. Gilson, *Trademark Protection and Practice* § 8.14 (1983).

**8.** *See* note 1.

one. We read it as indicating that the court correctly understood its inquiry to be whether consumers would be confused about which company milled the rice. Later in its opinion the court explicitly stated that the overall impression of the designs was not such "as to convey the thought that both packages of Toro rice were milled, processed, and marketed by Falcon". The court correctly understood that the question was confusion as to source.

No evidence of actual confusion was introduced, and the court stated, "In the absence of such evidence we cannot say that plaintiff has carried its burden of proof in this case". According to Falcon, this statement demonstrates that the court improperly required a showing of actual, rather than likely, confusion.

Actual confusion need not be shown in a suit for equitable relief, *Chevron,* 659 F.2d at 704, although it must be proved to recover damages under section 43(a) of the Lanham Act. *Frisch's Restaurants, Inc. v. Elby's Big Boys, Inc.,* 6 Cir., 670 F.2d 642, 647, *cert. denied,* 1982, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182; *Warner Bros. v. Gay Toys, Inc.,* 2 Cir.1981, 658 F.2d 76, 79. But actual confusion is "patently the best evidence of likelihood of confusion", *Chevron,* 659 F.2d at 704, and a showing of actual confusion probably requires a finding of likelihood of confusion even in the absence of other proof, *see Frisch's,* 670 F.2d at 648 n. 5. The context of the district court's comment is significant: having considered all the other indicia of confusing similarity and finding little to support Falcon's position, the court simply held that in all probability only a showing of actual confusion would be strong enough evidence to swing the case in Falcon's favor. In *Amstar,* this Court similarly held that the weakness of the trademark and other factors compelled a finding of no likelihood of confusion "[i]n the absence of any solid evidence of actual confusion". 615 F.2d at 264. In the present case the district court stated explicitly, "Considering the above factors ... there exists no likelihood of confusion." Actual confusion was one of the factors considered by the trial court, but its ultimate inquiry was, as it should have been, whether confusion was likely.

### III.

There is no doubt that the court understood that the ultimate issue in this case was likelihood of confusion as to source. It remains for us to determine whether the district court was clearly erroneous in finding no likelihood of confusion. Citing *Chevron,* 659 F.2d at 703, and *Amstar,* 615 F.2d at 259–63, the court listed seven factors to be considered in deciding this issue: similarity of products, identity of retail outlets and purchasers, identity of advertising media, type (i.e., strength) of trademark or trade dress, defendant's intent, similarity of design, and actual confusion.[9] We now examine these factors individually.

**9.** These factors may not be relevant in every case, nor are they the only factors that may be considered. In an appropriate case, factors other than those listed may be relevant. *In re E.I. DuPont DeNemours & Co.,* C.C.P.A.1973, 476 F.2d 1357, 1361–62. For example, in a case between noncompetitors, it is appropriate to consider the lack of present competition as well as the likelihood that one party will expand its product line to compete with the other. *AMF Inc. v. Sleekcraft Boats,* 9 Cir.1979, 599 F.2d 341, 354; *see* 1 J. Gilson, *Trademark Protection and Practice* § 5.05 (1983). It is often appropriate to consider the degree of care exercised by purchasers: confusion is more likely, for example, if the products in question are "impulse" items or are inexpensive. *Sun-Fun Prods. v. Suntan Research & Dev., Inc.,* 5 Cir. 1981, 656 F.2d 186, 189; *see* note 11. Another factor sometimes mentioned is "previous contractual or business relations between the parties", *Sun-Fun,* 656 F.2d at 189. As in the present case, this factor will usually be considered as a subcategory of "intent". *See* note 10. Although the factors are sometimes characterized as "digits" which are "added together" to reach a "sum total" conclusion whether likely confusion is established, *B.H. Bunn Co. v. AAA Replacement Parts Co.,* 5 Cir.1971, 451 F.2d 1254, 1262–63, it is clear that some of the factors are more important than others and that they may have different weight in different cases, *DuPont,* 476 F.2d at 1362. The weight to be given to the various factors is a matter for the factfinder, and as long as it appears that all relevant proffered evidence was considered and that no impermissible inferences were drawn from that evidence, the factfinder's determina-

■ The first three factors are disposed of simply. Falcon's and Community's products, outlets, purchasers, and marketing methods are essentially identical, although Vidrine testified that he was no longer personally selling rice in Texas.

The district court held that the Falcon "trademarks" were weak, because they were largely descriptive of the variety and geographic origin of the rice. Although the court could have been more precise had it said "trade dress" rather than "trademark", the court's findings of fact are based on a correct interpretation of the law regarding the strength of trademark rights. Marks may be classified as generic, descriptive, suggestive, or arbitrary and fanciful. These were once conceived as distinct categories but are now commonly viewed as "central tones in a spectrum"; within this spectrum the strength of a mark, and of its protection, increases as one moves away from generic and descriptive marks toward arbitrary marks. *Soweco, Inc. v. Shell Oil Co.,* 5 Cir.1980, 617 F.2d 1178, 1183, *cert. denied,* 1981, 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816. The district court correctly held that many of the elements of Falcon's trade dress are weak. "Toro" is the generic name for the variety of long grain rice sold by both mills; independently, the mark could not be protected at all. The map of Louisiana, with a star at Crowley, is essentially descriptive of Falcon Rice's origin. Other marks are stronger—"HOME COUNTRY", for example, is best described as suggestive, and "ED'S" is apparently arbitrary.

Falcon argues that the *design* of its packages is "arbitrary". On the Toro bag, for example, they point to the blue oval and orange and blue lettering. While most elements of design—that is, colors, shapes, placement of marks on the package, etc.— can independently be called "arbitrary", no seller can foreclose others absolutely from using any particular color or other feature. As this Court said in *Chevron:* "Ortho could not preempt the use of red and yellow nor does it seek to do so. It seeks only to protect the combination of particular hues of these colors, arranged in certain geometric designs ... in such a fashion that, taken together, they create a distinctive visual impression." 659 F.2d at 703; *see also Vitarroz Corp. v. River Brand Rice Mills, Inc.,* 1967, S.D.N.Y., 266 F.Supp. 981 (color yellow as background on rice packages not subject to exclusive appropriation). The packages at issue in *Chevron,* especially the colors and design, were virtually identical. *See* 659 F.2d at 698. Even a "weak" trade dress would be infringed by an identical trade dress. But a slight variation in color or design will often be enough to avoid confusion. For this reason, the protection accorded to the color and design aspects of a "distinctive visual impression" should usually be a weak protection. Considering all the elements, pictorial and verbal as well as geometric and chromatic, the district court correctly found that Falcon's trade dress, taken as a whole, was entitled to relatively weak protection.

Falcon also argues that the district court erred in finding that Falcon had not established that the defendant intended to copy, deceive, or confuse. No direct evidence of intent was offered, and the court held that Vidrine's prior relationship with Rice City "is insufficient to establish" intent. Falcon correctly states that intent to deceive or to profit from confusion may be inferred from the acts of an infringer. *See Chevron,* 659 F.2d at 704. Falcon asserts that such an inference is mandated by the facts here. Because of his prior relationship with Rice City, says Falcon, Vidrine was required to stay "well clear" of Falcon's marks. For this proposition, Falcon cites *Chevron.*[10] In that case there was clear evidence that the

tion will not be overturned unless clearly erroneous.

**10.** Falcon also cites *Cyclonaire Corp. v. United States Sys.,* 1980, D.Kan., 209 U.S.P.Q. 310, 314–15, and *Arnar-Stone Laboratories, Inc. v. Medical Supply Co.,* 1966, N.D.Ill., 152 U.S.P.Q.

61, 62. A "prior relationship" is sometimes treated as a separate factor, but in this case the court appropriately considered it in its evaluation of the evidence concerning the defendants' intent.

defendant "meant to copy Ortho's trade dress, at least 'as much as the law would allow'". *Id.* Here, however, there is no direct evidence of an intent to copy; more importantly, the copying is in no respect as blatant or close as that done in *Chevron.* In the absence of direct evidence or close copying, we cannot say that the district court was required to infer intent or that its finding to the contrary was clearly erroneous.

The district court found that the designs were not similar. Falcon challenges this finding as based on an incorrect legal standard. Falcon notes that similarity is to be determined by comparing the overall impression created by the designs, rather than by focusing on details. *Chevron,* 659 F.2d at 704. We agree with Falcon's statement of the governing legal standard but reject its contention that the district court failed to apply this standard. The court noted the various similarities of detail, but found that overall the packages did not convey the impression that they came from the same source. In challenging this finding, Falcon paradoxically stresses the detail and ignores the overall differences. We find that the district court applied the correct standard and that its conclusion is not clearly erroneous. The packages have different emphases, different typefaces, and different styles. Community's "CAJUN COUNTRY" medium grain rice package is far more intricate and flamboyant, with its four colors, varied slogans, and decorative lettering, than Falcon's simpler "ED'S" package. The same is true, though to a lesser extent, of the Toro rice packages. Despite Falcon's protestations that in southwest Louisiana "CAJUN COUNTRY" and "HOME COUNTRY" carry the same connotations, the record does not support this contention and we cannot agree that these phrases mean the same thing, even to Cajuns. Although Falcon argues that rice consumers exercise a low degree of care because the prices are low, this lack of attention does not render different packages similar.[11] The characteristics of the consuming public, as well as the differences and the similarities among the packages, were fully and carefully argued before the district court. That court, applying a correct standard of law, found little overall similarity. There is no basis for us to disturb this finding.

■ Finally, Falcon returns to the issue of actual confusion and asserts that, even if the district court did not *require* evidence of actual confusion, it placed too much emphasis on the absence of such evidence.[12] Falcon observes that such evidence would be especially hard to produce since the product is inexpensive and the goods involved are identical. *See Chevron,* 659 F.2d at 704–05. Moreover, Falcon notes that it brought suit a short time after Community began marketing its new Cajun Country brand. In these circumstances, lack of actual confusion should not weigh strongly against Falcon.[13] *Id.* We find, however,

---

11. Falcon presents "degree of care" as a separate factor in its analysis, arguing that there was evidence that consumers purchase rice largely on the basis of the color of the package. That evidence was by no means unambiguous, and in any event was considered in full by the trial court in its determination whether the packages were likely to be confused by the buying public. This case stands in sharp contrast to *American Rice, Inc. v. Arkansas Rice Growers Coop. Ass'n,* 1982, S.D.Tex., 532 F.Supp. 1376, *aff'd,* 5 Cir.1983, 701 F.2d 408. That case, like this one, involved claims that rice packages were confusingly similar, but in that case the consuming public was the people of Saudi Arabia. The court therefore discounted the differences of detail between the packages and stressed the overall similarities, because the differences were likely to be imperceptible to Saudi Arabian consumers. 532

F.Supp. at 1385–86. No evidence in this case suggests that consumers in Louisiana and Texas are unable or unwilling to perceive the very marked differences between Falcon's and Community's packages.

12. Falcon also argues that when *intent* to confuse is established the law presumes actual confusion. We have already rejected Falcon's assertion that intent was proved, and therefore need not address this argument.

13. On the other hand, concurrent use of two marks over a substantial length of time without actual confusion strongly suggests that there is no likelihood of confusion. *Keebler Co. v. Rovira Biscuit Corp.,* 1 Cir.1980, 624 F.2d 366, 377; *DeCosta v. CBS, Inc.,* 1 Cir.1975, 520 F.2d 499, 514, *cert. denied,* 1976, 423 U.S. 1073, 96

that the district court did not place undue weight on this factor. When the court reached the issue of actual confusion, it had already assessed the other factors and had found little to support a finding of likelihood of confusion. It accordingly noted that only actual confusion would be enough to overcome the rest of the evidence.

## IV.

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746, 766; *Supreme Assembly, Order of Rainbow for Girls v. J.H. Ray Jewelry Co.,* 5 Cir.1982, 676 F.2d 1079, 1082. "In other words, we reverse when the result ... does not reflect the truth and the right of the case." *Armstrong Cork Co. v. World Carpets, Inc.,* 5 Cir., 597 F.2d 496, 501, *cert. denied,* 1979, 444 U.S. 932, 100 S.Ct. 277, 62 L.Ed.2d 190. This is certainly not the case here. The district court correctly applied the governing legal standards and made findings of fact that are fully supported by the entire evidence. Falcon failed to establish likelihood of confusion; it cannot prevail on any of its claims.

At most, Falcon has established that a former employee has gone into competition against his former employer and has appropriated certain elements of Falcon's trade dress in an effort to improve his competitive position. As long as consumers are not deceived or confused, however, this is not tortious unfair competition. "The trademark laws exist not to 'protect' trademarks but ... to protect the consuming public from confusion, concomitantly protecting the trademark owner's rights to a nonconfused public." *James Burrough Ltd. v. Sign of the Beefeater, Inc.,* 7 Cir.1976, 540 F.2d 266, 277. By ensuring correct information in the marketplace, the laws reduce

losses caused by misunderstanding and deceit and thus permit consumers and merchants to maximize their own welfare confident that the information presented is truthful. If confusion and deception are avoided, it is not only acceptable but desirable for a competitor to make his products more pleasing to the general public. As Justice Brandeis said 45 years ago, the competitor

"is undoubtedly sharing in a market which was created by the skill and judgment of [another] and has been widely extended by vast expenditures in advertising persistently made. But that is not unfair. Sharing in the good will of an article unprotected by patent or trademark is the exercise of a right possessed by all—and in the free exercise of which the consuming public is deeply interested."

*Kellogg Co. v. National Biscuit Co.,* 1938, 305 U.S. 111, 122, 59 S.Ct. 109, 115, 83 L.Ed. 73, 80.

The judgment is AFFIRMED.

---

S.Ct. 856, 47 L.Ed.2d 83; *Affiliated Hosp. Prods. v. Merdel Game Mfg. Co.,* 2 Cir.1975, 513 F.2d 1183, 1188; *King Candy Co. v. Eunice*

*King's Kitchen, Inc.,* C.C.P.A.1974, 496 F.2d 1400, 1401–02.