746 F.2d 1033
 40 Fed.R.Serv.2d 608, 224 U.S.P.Q. 114
 LOUISIANA WORLD EXPOSITION, INC., Plaintiff-Appellee,
v.
R. Gordon LOGUE, Jr., New Orleans World's Fair, Inc.,
Louisiana World's Fair, Inc., 1984 Louisiana World
Exposition, Inc., 1984 World's Fair, Inc., New Orleans World
Exposition, Inc., 1984 New Orleans World Exposition, Inc.,
1984 New Orleans World's Fair, Inc., Official 1984 New
Orleans World's Fair, Inc., World's Fair, Inc., Defendants-Appellants.
 No. 84-3032.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 5, 1984.
 
 1
 David W. Oestreicher, II, Ralph S. Whalen, Jr., New Orleans, La., for defendants-appellants.
 
 
 2
 Thomas S. Keaty, David M. Kelly, Margaret Ann Brown, New Orleans, La., for plaintiff-appellee.
 
 
 3
 Appeal from the United States District Court for the Eastern District of Louisiana.
 
 
 4
 Before GEE and POLITZ, Circuit Judges, and BELEW,* District Judge.
 
 BELEW, District Judge:
 
 5
 Defendants-Appellants appeal from an order of the District Court permanently enjoining them from making or selling merchandise bearing a name or emblem confusingly similar to those of the Plaintiff. We affirm that order.
 
 Factual Background
 
 6
 Defendant Logue is an attorney living in New Orleans. In early 1980, having heard that the World's Fair might be located in his home town four years hence, Logue devised a scheme whereby he would market items such as T-shirts and other consumer goods bearing a name and emblem related to the fair so that tourists visiting the fair would buy them as mementos of their trip.
 
 
 7
 To effectuate his plan, Logue in January, 1981, registered the following names with the Louisiana Secretary of State: New Orleans World's Fair, Inc.; Louisiana World's Fair, Inc.; 1984 Louisiana World Exposition, Inc.; 1984 World's Fair, Inc.; New Orleans World Exposition, Inc.; 1984 New Orleans World Exposition, Inc.; 1984 New Orleans World's Fair, Inc.; Official 1984 New Orleans World's Fair, Inc.; and, World's Fair, Inc. Thereafter, he hired a commercial artist to develop an emblem which Logue describes as "thematically consonant with the 1984 Louisiana World Exposition, but in no way similar to the logo of appellee-plaintiff."
 
 
 8
 Plaintiff, Louisiana World Exposition, Inc., traces its origin to a group of Louisiana businessmen who developed the idea of a 1984 New Orleans World's Fair in 1974 as a way to stimulate the economy of their state and their city. In order for a World's Fair to exist, it must have the approval of the Bureau of International Expositions.[1] This process entails getting the support of the potential host city and state, as well as getting approval from the U.S. Department of Commerce. After six years of work, the Plaintiff received approval from the Department of Commerce. One year after that, in April of 1981, the Bureau of International Expositions formally sanctioned the event which was scheduled for 1984.
 
 
 9
 After being formally approved, Plaintiff Louisiana World Exposition, Inc., began its fund raising and financing efforts. Specifically, the group needed guarantees in the amount of forty million dollars. A portion of the funding of the fair was to come from the sale of emblem-marked merchandise as well as a major licensing program. The latter is a program whereby companies pay the Plaintiff money so that their product becomes the official World's Fair product (e.g. the official airline, beer, and soft drink) and such companies have the exclusive right to advertise their product as such. The Plaintiff's official emblem was developed to complement the theme of the World's Fair: "Rivers of the World--Fresh Water as a Source of Life." The emblem was to be central to the sale of Plaintiff's merchandise and to its official product program described above.
 
 
 10
 While the Plaintiff's official emblem and that of Mr. Logue's corporations are distinguishable, both have similar components that make them appear substantially similar--a circle (representing the globe), an undulating line (representing a river), and a blue and silver color scheme. Plaintiff's official emblem has "84" printed inside the circle. The official T-shirt emblem also includes "Louisiana World Exposition" and "May 12-Nov. 11, 1984" printed around the outside edge of the circle. Mr. Logue's emblem has "1984 New Orleans World's Fair" printed outside the circle.[2] The Plaintiff received federal servicemark registration for its official emblem.
 
 Proceedings in District Court
 
 11
 After an evidentiary hearing, the District Court, in a fourteen page opinion that details findings of fact and conclusions of law, issued a temporary restraining order.[3] The order also noted that at the expiration of ten days, a preliminary injunction would issue without any further hearing unless the Defendants could show to the Court that there was a real need to present further evidence. No such showing was made and on February 10, 1983, the District Court entered a preliminary injunction by making a notation on the docket. The Defendants then filed an appeal (No. 83-3089) from the temporary restraining order and the preliminary injunction, and the appeal was dismissed on June 9, 1983, for want of prosecution since the Defendants failed to file a brief on time.
 
 
 12
 On December 21, 1983, the District Court held a hearing and ruled that the Defendants' Motion to Enter Judgment on the Pleadings was denied and that the preliminary injunction was made permanent pursuant to Fed.R.Civ.P. 65.[4]
 
 
 13
 Defendants then filed the instant appeal (No. 84-3032) and devoted their entire brief to a discussion of the merits of issuing the temporary restraining order and the preliminary injunction.
 
 
 14
 Two questions are presented by this appeal. First, does this Court have jurisdiction to hear the appeal; and second, if so, was the granting of the permanent injunction proper.
 
 The Preliminary Injunction
 
 15
 We conclude that we cannot hear an appeal from the temporary restraining order and the preliminary injunction. The dismissal of the Defendants' initial appeal (taken after the issuance of the preliminary injunction) precludes them from raising issues peculiar to the temporary relief requested at that time. The Defendants were allowed one extension of time in which to file their brief before their appeal was dismissed for failure to comply with our order. Such a dismissal is within our discretion. Tidwell v. Dees, 464 F.2d 1297 (5th Cir.1972). By not filing their brief, Defendants abandoned their first appeal. Switzer v. United States, 131 F.2d 377 (6th Cir.1942).
 
 
 16
 Once an order granting a permanent injunction is entered, the order granting the preliminary injunction is merged with it, and an appeal is proper only from the order granting the permanent injunction. The Defendants will be able to obtain as broad a review on the merits of the order granting the permanent injunction as they could have obtained on appeal from the order granting the preliminary injunction. Securities Exchg. Com'n v. First Fin. Group of Tex., 645 F.2d 429 (5th Cir.1981). The appeal of the issues peculiar to the preliminary injunction are moot. See Payne v. Fite, 184 F.2d 977 (5th Cir.1950). The appeal from the order granting the preliminary injunction is dismissed. This case presents an appeal only from the order granting the permanent injunction.
 
 The Permanent Injunction
 
 17
 This interlocutory appeal under 28 U.S.C. Sec. 1292(a)(1) from the order granting the permanent injunction confronts us with the question as to our jurisdiction, which we raise sua sponte.
 
 
 18
 At a hearing on December 21, 1983, the District Court granted a permanent injunction. A "minute order"[5] was sent to all the parties that provided in part:
 
 
 19
 C.A. 83-348 Wed. Dec. 21, 1983 10:00 A.M. DEFTS MTN TO ENTER JUDGT ON THE PLEADINGS--DENIED PREVIOUSLY SUBMITTED EVIDENCE AT THE PREL. HRG.
 
 ORDERED
 
 20
 * * *
 
 
 21
 Prel. Injunction is now permanent under rule 65 of FRCP Deft's mtn to enter judgt on the pleadings--Denied. Date of Entry: DEC 22 1983
 
 
 22
 This order did not dispose of all the matters before the District Court. The "minute order" is recorded in the docket entry:
 
 
 23
 12/21/83 ... Hrg on Deft's mtn to enter judg on the pleadings--DENIED previously submitted evidence at the prel. hrg.--ORDERED--Prel. injunction is now permanent under rule 65 FRCP; Deft's mtn to enter judg on the pleadings--DENIED dktd 12/22/83.
 
 
 24
 Does the "minute order" sufficiently satisfy the separate judgment requirement of Fed.R.Civ.P. 58 to give us appellate jurisdiction? All parties urge us to hold that it does. We hold that it does.
 
 
 25
 Fed.R.Civ.P. 58 requires that "[e]very judgment shall be set forth on a separate document." This requirement applies to interlocutory appeals. See Beukema's Petroleum Co. v. Admiral Petroleum Co., 613 F.2d 626 (6th Cir.1979); Furr's Cafeterias, Inc. v. NLRB, 566 F.2d 505 (5th Cir.1978). In United States v. Indrelunas, 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973), the Supreme Court stated that Rule 58 must be "mechanically applied" so that there is no uncertainty as to the timeliness of an appeal. In Bankers Trust Co. v. Mallis, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978), an exception to Indrelunas was recognized when the order was intended to be a final judgment in the case and the parties did not object. The Court reasoned:
 
 
 26
 Certainty as to timeliness, however, is not advanced by holding that appellate jurisdiction does not exist absent a separate judgment. If, by error, a separate judgment is not filed before a party appeals, nothing but delay would flow from requiring the court of appeals to dismiss the appeal. Upon dismissal, the district court would simply file and enter the separate judgment, from which a timely appeal would then be taken. Wheels would spin for no practical purpose. (footnote omitted)
 
 
 27
 Id. at 385, 98 S.Ct. at 1120. Under these circumstances, we may accept jurisdiction of the appeal, but we are not required to do so. Hanson v. Town of Flower Mound, 679 F.2d 497 (5th Cir.1982).
 
 
 28
 The Mallis exception has been cautiously applied to appeals of injunctive orders. In Beukema's Petroleum Co. v. Admiral Petroleum Co., 613 F.2d 626, the Sixth Circuit remanded the case to the district court so that the preliminary injunction could be entered upon a separate document. The district court had issued a memorandum opinion that concluded, "A preliminary injunction will be issued ...." Id. at 628 (emphasis added). The appellate court concluded that this language did not reflect the district court's intent that the opinion act as an operable judgment. The court noted that there was no "practical reason" for ignoring the better practice of requiring compliance with Rule 58 and that the remand would not facilitate a loss of the right of appeal, "a major concern of Mallis," because a clear and well-defined judgment could then be returned to the court of appeals. Id. at 629. See also Herschensohn v. Hoffman, 593 F.2d 893 (9th Cir.1979).
 
 
 29
 In the instant case, the "minute order" reflects the District Court's intent that the order act as an operable judgment by the language "Prel. Injunction is now permanent under rule 65 of FRCP." (emphasis added) The docket entry reflects the same language and intent. Moreover, we note that Defendants would effectively be denied their right to appeal the injunction if we refuse to decide the merits today because the World's Fair is scheduled to close in November, 1984. In that event, Defendants' only recourse is to seek damages. The Federal Rules of Civil Procedure are to be "construed to secure the just, speedy, and inexpensive determination of every action." Bankers Trust Co. v. Mallis, 435 U.S. at 386-87, 98 S.Ct. at 1121. Under these circumstances and the particular factual and procedural posture of this case, we believe the "minute order" can and should act as an operable judgment within the meaning of Rule 58. Consequently, we hold that this court has jurisdiction of this appeal.
 
 Likelihood of Confusion
 
 30
 Next, we address the District Court's finding that "there exists a likelihood that the public would confuse the products of plaintiff and defendants because of the defendants' use of trademarks and an emblem confusingly similar to those of the plaintiff." Plaintiff sued for false designation of origin pursuant to the Lanham Trademark Act, 15 U.S.C. Sec. 1125(a)[6] and for unfair competition pursuant to La.Rev.Stat.Ann. Sec. 51:1401, et seq. Likelihood of confusion is the essential ingredient for claims of unfair competition under both the Lanham Act and the Louisiana statute. Falcon Rice Mill v. Community Rice Mill, 725 F.2d 336 (5th Cir.1984). This finding of fact may be reversed only if clearly erroneous. Falcon Rice Mill, 725 F.2d 336; Chevron Chemical Co. v. Voluntary Purchasing Groups, Inc., 659 F.2d 695 (5th Cir.1981), cert. denied, 457 U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982).
 
 
 31
 This court has enumerated seven factors to be considered in determining likelihood of confusion: (1) type of trademark; (2) similarity of design; (3) similarity of product; (4) identity of retail outlets and purchasers; (5) identity of advertising media utilized; (6) defendant's intent; and (7) actual confusion.
 
 
 32
 Armco, Inc. v. Armco Burglar Alarm Co., Inc., 693 F.2d 1155, 1159 (5th Cir.1982). A finding of likelihood of confusion need not be supported by a majority of these factors. Id.
 
 
 33
 The first factor to consider is the type of mark used by the Plaintiff. "The purpose of a trademark is to enable consumers to distinguish between similar goods or services supplied from different sources." Chevron Chemical Co. v. Voluntary Purchasing Groups, 659 F.2d 695, 702 (5th Cir.1981). A fictitious, arbitrary, or fanciful mark, such as "Kodak," is a strong mark that is patently distinctive to consumers. It bears no relationship to the products or services to which it applies, but it readily identifies the producer. Id. at 702. Consequently, it is legally protectable without needing to show that the mark has acquired a secondary meaning to the consuming public.[7] Zatarains, Inc. v. Oak Grove Smokehouse, Inc., 698 F.2d 786 (5th Cir.1983); Chevron, 659 F.2d 695. A descriptive mark identifies a characteristic about the product or service. Zatarains, 698 F.2d 786. "Alo" is a descriptive mark with reference to products containing the gel of the aloe vera plant. Aloe Creme Laboratories, Inc. v. Milsan, Inc., 423 F.2d 845 (5th Cir.1970). It is less distinctive than the fictitious mark, so it is protected only when a secondary meaning is shown. Zatarains, 698 F.2d 786; Sun Banks of Florida, Inc. v. Sun Federal Savings & Loan Association, 651 F.2d 311 (5th Cir.1981). A suggestive mark "suggests," rather than describes, some characteristic about the product or service, thereby requiring "the consumer to exercise his imagination to reach a conclusion as to the nature of those goods." Soweco, 617 F.2d at 1184 ("If used as a trademark for refrigerators, the term 'Penguin' would be suggestive"). A suggestive mark is protectable without proof of a secondary meaning. Finally, a generic mark refers to a genus or class to which the product or service belongs. Id. at 1183. A generic term is never protectable. Zatarains, 698 F.2d 786.
 
 
 34
 The instant injunction covers both the names and emblems that are Plaintiff's trade or service-marks. The fair has been promoted by Plaintiff and reported by the press since mid-1970's under the names: "Louisiana World Exposition," "The 1984 New Orleans World's Fair," "New Orleans World's Fair," "The 1984 World's Fair," "1984 Louisiana World's Fair," and "The World's Fair." We also note that in July of 1982, the Louisiana Legislature passed legislation prohibiting any one other than the Plaintiff, Louisiana World Exposition, Inc., from using the following names or similar names: The 1984 World's Fair, New Orleans World's Fair, 1984 Louisiana World's Fair, and the World's Fair. We hold that the above names and trademarks are descriptive and that they have acquired a secondary meaning to the public.[8]
 
 
 35
 Plaintiff's blue and silver emblem or service mark is a circle with an undulating line and "84" printed across it. The circle representing our planet and the line representing a river complement the Fair's theme "Rivers of the World--Fresh Water as a Source of Life." We hold that Plaintiff's emblem is suggestive and therefore protectable.
 
 
 36
 The similarity of design is determined by considering the overall impression created by the mark as a whole rather than simply comparing individual features of the mark. Armstrong Cork Co. v. World Carpets, Inc., 597 F.2d 496, 502 (5th Cir.1979), cert. denied, 444 U.S. 932, 100 S.Ct. 277, 62 L.Ed.2d 190 (1979), citing Restatement of Torts Sec. 729, Comment b (1938). As set out above, both emblems have common elements and color schemes. Further, they are both suggestive of the Fair's fresh water theme. From the material before us, we agree that the two emblems are similar and would lead to confusion.
 
 
 37
 The products, retail outlets, and purchasers are all similar: inexpensive souvenirs sold at small shops to tourists. Both parties make T-shirts and caps. Defendants' goods are sold in stores located in the French Quarter of New Orleans, which is also the Plaintiff's most lucrative market. The fact that the same exact stores do not carry both parties' merchandise enhances the likelihood of confusion. "The inability to compare the products side by side ... may increase the likelihood of confusion." Sun-Fun Products, Inc. v. Suntan Research & Development, Inc., 656 F.2d 186, 192 (5th Cir.1981).
 
 
 38
 There is no evidence to suggest that either party advertised their souvenirs. Here again, Logue benefited from the world-wide advertising campaign put on by the Plaintiff in promoting the fair. Logue admitted, however, that his intent was to earn income by identifying his products with the worldwide exposition put on by the Plaintiff. "[T]hat fact alone 'may be sufficient to justify the inference that there is confusing similarity.' " Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 263 (5th Cir.1980), cert. denied, 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129, quoting Restatement of Torts Sec. 729, Comment f (1938).
 
 
 39
 Finally, although a showing of actual confusion is not mandatory, it is "patently the best evidence of likelihood of confusion." Falcon Rice Mill, 725 F.2d at 345, quoting Chevron, 659 F.2d at 704. The District Court heard testimony from a man who bought one of the Defendants' T-shirts thinking it was made by the Plaintiff. This evidence was found by the District Court to be "credible evidence of the actual confusion of a purchaser." The trial judge is best able to judge the credibility of a witness at trial, therefore, we are reluctant to disturb this finding on appeal. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).
 
 
 40
 We hold that the District Court's findings of fact are not clearly erroneous.
 
 
 41
 The District Court's order enjoining the Defendants from manufacturing, distributing, offering for sale, advertising and selling merchandise bearing the names or trademarks of any of the nine corporate Defendants or any other marks, emblems, logos, or names confusingly similar to those of Plaintiff is affirmed.
 
 
 42
 AFFIRMED.
 
 
 
 *
 District Judge of the Northern District of Texas, sitting by designation
 
 
 [1]
 A treaty organization that sanctions and coordinates plans for expositions and World's Fairs to be held in any of its forty-five member countries
 
 
 [2]
 Defendant Logue had two additional emblems he had registered but not used, "World's Fair" and "1984 Louisiana World Exposition."
 
 
 [3]
 Judge Beer held the hearing on January 31, 1983, wrote an opinion and granted the preliminary injunction
 
 
 [4]
 Judge Feldman held the hearing on December 21, 1983, and made the preliminary injunction permanent
 
 
 [5]
 See Rappaport v. United States, 557 F.2d 605 (7th Cir.1977) for a general discussion on "minute orders."
 
 
 [6]
 15 U.S.C. Sec. 1125(a) provides:
 Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, ... shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.
 
 
 [7]
 A secondary meaning arises when the primary significance of the trademark in the minds of the consuming public is to identify the producer. Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178 (5th Cir.1980)
 
 
 [8]
 We also note that the term "World's Fair" was recognized as having a secondary meaning in New York World's Fair 1939, Inc. v. World's Fair News, Inc., 163 Misc. 661, 297 N.Y.S. 923 (N.Y.Sup.Ct.1937), aff'd, 256 A.D. 373, 10 N.Y.S.2d 56 (N.Y.App.Div.1939)