**Woody ALLEN, Plaintiff,**

**v.**

**MEN'S WORLD OUTLET, INC. and Ribaudo & Schaefer, Inc., Defendants.**

**No. 87 Civ. 1631 (CBM).**

United States District Court, S.D. New York.

Jan. 29, 1988.

Laufer & Farkash by Jacob Laufer and Patricia M. Karish, New York City, for plaintiff.

Satterlee & Stephens by James F. Rittenger and Mario Aieta, New York City, for Ribaudo & Schaefer, Inc.

Morris, Graham, Stephens & McMorrow by Donald K. Koch, Great Neck, N.Y., for Men's World Outlet, Inc.

## OPINION

MOTLEY, Senior District Judge.

For the third time in as many years plaintiff Woody Allen ("Allen"), the well-known entertainment figure recently characterized as "America's most consistently venturesome film maker,"[1] comes before this court to enjoin what he contends is the unauthorized exploitation of his likeness and reputation through the use of celebrity look-alikes in advertising matter. Defendants Men's World Outlet, Inc. ("Men's World") and Ribaudo & Schaefer ("R & S") argue that three is one time too many. Presently before this court are motions by R & S to dismiss on the grounds of (1) res judicata and collateral estoppel and (2) failure to state a claim under Fed.R.Civ.P. 12(b)(6), and a motion by Men's World to dismiss on the grounds of res judicata and collateral estoppel. For the reasons set forth below the court denies the motions to dismiss on grounds of former adjudication; grants R & S's 12(b)(6) motion as to Allen's common law unjust enrichment and New York General Business Law § 368–d claims; declines to reach the 12(b)(6) motion as to Allen's New York Civil Rights Law §§ 50–51 claim; denies the motion as to Allen's Lanham Act claims; and, treating the motion as one for summary judgment under Fed.R.Civ.P. 56, enters summary judgment for Allen on those claims.

## FACTS

*Prior Proceedings*

Allen first sought relief from this court in April 1984 against National Video, Inc.,

---

**1.** Canby, review of *September,* N.Y. Times, Dec. 18, 1987, at C3, col. 1.

which used a photograph of the Allen look-alike Phil Boroff to promote its nationally franchised video rental chain. *Allen v. National Video, Inc.*, 610 F.Supp. 612 (S.D.N.Y.1985). In *National Video*, Allen sued National Video, Boroff, and Boroff's agent, Ron Smith. Allen contended that such look-alike advertising violated his rights under both the Lanham Trade–Mark Act, 15 U.S.C. §§ 1051–1127 (1982), and N.Y. Civ.Rights L. §§ 50–51 (McKinney 1976 & Supp.1988). Because the offending photograph was not one *of* Allen, this court declined to reach the state law claim, but granted summary judgment on Allen's Lanham Act claim, having found that the advertisement "create[d] the likelihood of consumer confusion over whether plaintiff endorsed or was otherwise involved with National Video's goods and services." *National Video*, 610 F.Supp. at 627. An order issued simultaneously with the opinion enjoined Boroff "from appearing as a look-alike for plaintiff in advertising for products or services in interstate commerce which creates a likelihood that a reasonable person might believe that he was actually plaintiff or that plaintiff had approved of his appearance" and Smith from "using or offering the services of defendant Boroff for any advertising creating a likelihood of consumer confusion as described in the [injunction against Boroff]."

On April 5, 1986, *Newsday* ran an ad for defendant Men's World featuring a photograph of Boroff with a clarinet.[2] The copy evoked the "schlemiel" persona Allen cultivated up through his appearance in *Annie Hall.* Below the picture of Boroff, in small lightface type, appeared the sentence "This is a Ron Smith Celebrity Look–Alike." Allen moved to hold Smith and Boroff in contempt of this court's May 1985 Order. A hearing was held on June 5, 1986, and a

memorandum opinion denying the motion filed on June 25, 1986. Although this court found the Men's World advertisement in "clear contempt" of the spirit of its order and opinion, it also found, reluctantly, that "the advertisements are not strictly violative of the letter of these mandates." *Allen v. National Video, Inc.,* No. 84 Civ. 2764 (CBM) (S.D.N.Y. June 25, 1986) [*Allen II*], slip op. at 2 [Available on WESTLAW, 1986 WL 7270]. Because the order failed to specify how Smith and Boroff were to avoid consumer confusion—by placing disclaimers in boldface type that both identified Boroff as a look-alike and stated that Allen did not endorse the product—this court could not hold Smith and Boroff in contempt. The order's generalized definition of consumer confusion in terms of the reaction of a reasonable person gave these defendants a "weak but colorable" argument that they did not in fact create such confusion, depriving the underlying mandate of the "clear and unambiguous" character it must have if contempt sanctions are to be imposed for its violation. *Id.* However, an amended order supplementing the May 1985 order was filed simultaneously, to clarify what defendants were required to do in order to avoid illegal consumer confusion.[3]

*The Present Case*

The present action involves the same June 1986 *Newsday* ad as did *Allen II.* The difference is that instead of suing Smith and Boroff, Allen is now suing Men's World and R & S, the advertising agency that created the ad. The Complaint alleges that the ad violates Allen's rights under the Lanham Act, N.Y.Civ.Rights L. §§ 50–51, N.Y.Gen.Bus.L. § 368–d (McKinney 1984), and the New York common law of unjust enrichment, and seeks a permanent injunc-

**2.** Allen is known to be an enthusiastic clarinetist and to perform regularly at Michael's Pub, a New York City bistro.

**3.** In essence, the amended order added requirements that Boroff's photograph could appear as a look-alike for Allen, in advertising for products or services that move in interstate commerce, only if accompanied by a boldface disclaimer, in type at least equal in size to that in the body of the advertisement, identifying Bo-

roff as a look-alike and disclaiming any connection between Allen and the product or service; that Boroff serve a copy of the order on potential clients and explain to them its binding force; that Smith offer the services of Boroff or other Allen look-alikes only in compliance with the terms of the order; and that Smith also submit a copy of the order to potential users of Allen look-alikes.

tion, compensatory and punitive damages, an accounting, and costs.

As noted above, defendants offer three motions to dismiss under two theories. R & S moves under Fed.R.Civ.P. 12(b)(6) to dismiss for failure to state a claim; both R & S and Men's World move to dismiss on the theory that *Allen II*, having been decided against Allen, is res judicata and bars any further action against them.

## DISCUSSION

### *The Claims of Former Adjudication*

R & S and Men's World claim that this court's denial of the contempt motion in *Allen II* bars Allen's present claims against them, on theories of claim preclusion (res judicata) and issue preclusion (collateral estoppel) alike. These contentions must be rejected.

#### Res Judicata

■ Our Court of Appeals recently set out the familiar principles of claim preclusion as follows:

> The basic principles of res judicata are familiar. "[A] valid, final judgment on the merits is a bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand...." Such a judgment precludes the subsequent litigation both of issues actually decided in determining the claim asserted in the first action and of issues that could have been raised in the adjudication of that claim.

*NLRB v. United Technologies Corp.*, 706 F.2d 1254, 1259 (2d Cir.1983) (citation omit-

ted). Although R & S argues strenuously that *Allen II* and the present case involve the same claim or cause of action, it strangely does not argue at all that it and Men's World are privies of the parties in *Allen II.*

This court's own study of the matter discloses no reason to regard the present defendants as privies of the parties in *Allen II.* This court and our Court of Appeals have taken privity to consist of a "mutual or successive relationship to the same right of property," *Price v. Worldvision Enterprises, Inc.*, 455 F.Supp. 252, 259 (S.D.N.Y.1978) (emphasis deleted) (quoting *Litchfield v. Goodnow*, 123 U.S. 549, 550–51, 8 S.Ct. 210, 210–11, 31 L.Ed. 199 (1887)), *aff'd mem.*, 603 F.2d 214 (2d Cir.1979), and have noted that "one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the litigation," *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). *See Staten Island Rapid Transit Operating Authority v. ICC*, 718 F.2d 533, 543 (2d Cir.1983). Defendants point to no right of property whatsoever that they have in common with the *Allen II* defendants. Indeed, R & S and Men's World are connected with Smith and Boroff by nothing more than their mutual involvement with the offending *Newsday* ad. Claim preclusion (res judicata) requires "a much stronger link between the parties and their 'privies' " than the mere " 'affinity of interest' " found here.[4] *Staten Island Rapid*

---

4. *Cf. United Technologies*, 706 F.2d at 1259–60: But the circumstance that several operative facts may be common to successive actions between the same parties does not mean that the claim asserted in the second is the same claim that was litigated in the first, and that litigation of the second is therefore precluded by the judgment in the first. Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or series of connected transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.

Thus, even in a second action between the *same* parties res judicata requires a tighter link be-

tween claims than is found here. In *Allen II*, the issue was whether Smith and Boroff had violated this court's *National Video* contempt order. Evidence germane to this issue would relate to such matters as Smith and Boroff's knowledge of the order and what it required, Allen's showing that Smith and Boroff had willfully violated the order, and so on. In this Lanham Act case, the issue is whether Men's World and R & S, parties not bound by the order, engaged in conduct that created a likelihood of consumer confusion. Evidence relevant to this issue has nothing whatever to do with whether Smith and Boroff, who are not parties to this action, violated the order, even though the two cases concededly involve the same series of transactions.

*Transit Operating Authority*, 718 F.2d at 542. As for the *Expert Electric* criterion of privity, there is not the slightest indication in the record that R & S and Men's World gave Smith and Boroff authority to represent them, or reason to suppose that Smith and Boroff adequately represented Men's World's and R & S's interests.[5]

For these reasons, this court holds that *Allen II* is not res judicata as to the present defendants, and the motion to dismiss the complaint on that ground is denied.

Collateral Estoppel

■ In *United Technologies*, the Court of Appeals also reviewed the elements of collateral estoppel:

The doctrine of collateral estoppel ... normally will bar the relitigation of an issue of law or fact that was raised, litigated, and actually decided by a judgment in a prior proceeding between the parties, if the determination of that issue was essential to the judgment, regardless of whether or not the two proceedings are based on the same claim.

706 F.2d at 1260. R & S argues that the present action is barred by collateral estoppel, inasmuch as in order to find in *Allen II* that Smith and Boroff had not violated the contempt order, it was essential for this court to find that the ad did not create a likelihood of confusion—the question at issue in the present Lanham Act suit.

It takes little effort to see the invalidity of this argument. The very language of this court's memorandum opinion in *Allen II* shows clearly that only a technical deficiency in the drafting of the contempt order prevented a finding that Smith and Boroff were in contempt. We found their arguments "disingenuous," Memorandum Opinion at 2, only "reluctantly" denying Allen's contempt motion, and asserted that "the challenged advertisements are in clear contempt of the spirit of this court's order and opinion of last May 1985." *Id.* It was not necessary that we decide whether the ad caused consumer confusion: indeed, we expressly noted that one reason for denying the motion was that the manner in which the order was drafted left that question open: "[D]efendants have a weak but colorable argument that the advertisements in question were in compliance with the court's order because they did not in fact create consumer confusion of a prohibited type." This language shows clearly that this court did not reach the question of whether the Men's World ad caused consumer confusion, while intimating that it would answer that question affirmatively if it were to reach the question.[6] There was a colorable argument that the ads did not cause consumer confusion, characterized as

---

5. The fact that Smith and Boroff settled their dispute with Allen hardly suggests solicitude for the interests of Men's World and R & S at the expense of their own. Rather, it suggests what otherwise appears to be plainly the case: that Smith and Boroff were not representing the present defendants' interests at all, let alone adequately, in *Allen II*.

It is noteworthy that R & S tries to distance itself from Smith and Boroff in its Memorandum of Law in Support of its Motion to Dismiss, observing that it was not a party to the *Allen II* orders and claiming that it "acted in good faith in its very limited . use of the Boroff photograph," *id.* at 5, and that "Ribaudo & Schaefer have been inadvertently caught in the crossfire.... Plaintiff's crusade should not be carried out at the expense of these marginally connected defendants," *id.* at 12. A "marginally connected" party can scarcely be said to be a privy.

R & S cannot blow hot and cold in the same lawsuit: either the present defendants are closely connected enough with Smith and Boroff to be their privies, in which case R & S is scarcely the "inadvertent" victim of a crusade against Smith and Boroff, or they are not, in which case R & S cannot claim what it supposes to be the benefits of res judicata.

6. Thus, Allen's attempt to argue that if collateral estoppel were to apply it would apply *against* R & S and Men's World because this court held that there *was* consumer confusion is equally unavailing. Allen quotes passages from the transcript of the June 5, 1986 oral argument in *Allen II* in which the court expressed definite views about the ad. *See, e.g., id.* at 32 ("But the advertisement itself I think violates the Court's order...."); *id.* at 34 ("So I am not saying that the ad otherwise does not violate the Court's order. I think that it does."). Such remarks might well aid the parties in predicting what we would hold if we were confronted, as we are in the present case, with the question whether the ad caused consumer confusion; they are, however, dicta as to *Allen II,* in which we did not address that question at all.

"weak" but not addressed. It was sufficient to note that the argument existed to conclude that technically the order had not been violated.

Because the issue of consumer confusion was not decided, let alone necessarily decided, in *Allen II,* that opinion has no collateral estoppel effect in the present case. R & S's motion to dismiss Allen's complaint on collateral estoppel grounds is denied.

### The Men's World Motion

█ Res judicata is an affirmative defense, Fed.R.Civ.P. 8(c), · and as such is waived if not affirmatively pleaded in the answer. *Evans v. Syracuse City School District,* 704 F.2d 44, 47–48 (2d Cir.1983). Men's World's answer to the complaint pleads six affirmative defenses, see *id.* FIFTEENTH–TWENTIETH, but res judicata is not among them. Therefore there is no need to consider Men's World's motion papers on this topic separately.

### R & S's Rule 12(b)(6) Motion

R & S moves to dismiss each of Allen's causes of action for failure to state a claim. This court is persuaded that the motion must be granted as to some, though not all, of Allen's causes of action.

### Unjust Enrichment

█ Allen claims that defendants "have been unjustly enriched through their unauthorized exploitation of [his] name, portrait, picture, likeness, and *persona.*" Complaint ¶ 40 (emphasis in original). This is a common law claim against defendants for their alleged commercial use of "the name, portrait, or picture of any living person without first having obtained the written consent of such person." [7] That is to say that

it is a claim for violation of Allen's right to exploit his likeness—his right of publicity. The New York Court of Appeals has explicitly held, however, that the Civil Rights Law preempts any such common law cause of action:

> By its terms the statute applies to any use of a person's picture or portrait for advertising or trade purposes whenever the defendant has not obtained the person's written consent to do so.... Since the "right of publicity" is encompassed under the Civil Rights Law as an aspect of the right of privacy, which, as noted, is exclusively statutory in this State, the plaintiff cannot claim an independent common-law right of publicity.

*Stephano v. News Group Publications, Inc.,* 64 N.Y.2d 174, 183, 474 N.E.2d 580, 584, 485 N.Y.S.2d 220, 224 (1984) (citations and footnote omitted). This claim must be dismissed.

### Allen's § 368–d Claim

█ Allen correctly maintains that the *Stephano* court held only that the Civil Rights Law preempts common law causes of action, not statutory claims such as Allen makes under § 368–d of the General Business Law.[8] Allen's argument that he has stated a claim for trademark dilution under § 368–d is, however, less persuasive. It is undeniable that his "portrait and likeness is widely known and has long been identified with various of his major film works," Complaint ¶ 36, but it does not follow that his *face* "constitutes a strong mark that has a distinctive quality and has acquired a secondary meaning to Allen's devotees and to the general public," *id.* Allen claims that "[o]f course" "the face

7. For the purposes of this argument the court assumes, without deciding, that the photograph of Boroff used in the Men's World ad is a "portrait or picture" of Allen. This question was expressly left open in *National Video.* 610 F.Supp. at 624. It must, of course, be answered affirmatively if Allen is to have a cause of action under the New York Civil Rights Law.

8. Section 368–d of the General Business Law provides:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

... of a well known person ha[s] been recognized as a species of trademark," but the cases he cites do not stand for this proposition.[9]

If Allen's claim is that his *likeness* rather than his face is a trademark, it would not appear to be dilutable within the meaning of § 368-d.[10] A mark subject to dilution is "a strong mark—one which has a distinctive quality or has acquired a secondary meaning which is capable of dilution." *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 545, 369 N.E.2d 1162, 1166, 399 N.Y.S.2d 628, 632 (1977).[11] *See Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 625 (2d Cir.1983) (Second Circuit sets out elements of § 368-d claim as existence of strong mark with distinctiveness or secondary meaning, and proof of likelihood of dilution). "Distinctive," under § 368-d, has been held to mean "unique ... the opposite of descriptive or generic." *P.F. Cosmetique, S.A. v. Minnetonka, Inc.*, 605 F.Supp. 662 (S.D.N.Y.1985). Allen has not offered any argument to show that his likeness is, in this sense, any more distinctive than anyone else's, including Boroff's.[12] Thus Allen's argument must be that his likeness has acquired a secondary meaning that would be diluted by others' unauthorized use. In the present case, however, Allen only asserts that his likeness has a secondary meaning, without offering evidence for this proposition. As the Second Circuit has said, "proof of secondary meaning entails vigorous evidentiary requirements." *Thompson Medical Co. v. Pfizer, Inc.*, 753 F.2d 208, 217 (2d Cir.1985) (quoting *Ralston Purina Co. v. Thomas J. Lipton, Inc.*, 341 F.Supp. 129, 134 (S.D.N.Y.1972)). In *Thompson Medical*, the Second Circuit listed multiple factors for determining the existence of secondary meaning: "advertising expenditures ... consumer studies linking the name to a source ... sales success ... unsolicited media coverage of the product ... attempts to plagiarize the mark ... and length and exclusivity of the mark's use." *Id.* Allen has not offered an analysis of any of these factors, and so cannot be said to have carried his burden of having proven secondary meaning. *Cf. P.F. Cosmetique*, 605 F.Supp. at 672–73 (presentation of sales and advertising figures insufficient by itself to establish secondary

9. Allen reaches back to 1928 to a well-known passage of Learned Hand's setting forth the interests that underlie the common law doctrine of trademark dilution:

However, it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask.

*Yale Electric Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir.1928). Patently, this passage does not assert that a face can be a trademark. Rather, it explains that dilution without competition is tortious because the relation between trademark and owner is as intimate as that between face and owner.

The faces of *cartoon characters* are of course both copyrightable, *Walt Disney Productions v. Air Pirates*, 581 F.2d 751 (9th Cir.1978), *cert. denied sub nom. O'Neill v. Walt Disney Productions*, 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979), and registrable under the Lanham Act, *e.g., Frederick Warne & Co. v. Book Sales, Inc.*, 481 F.Supp. 1191, 1196–97 (S.D.N.Y.1979), but they are distinguishable from human faces in that they are essentially artifacts.

10. This court's use of trademark analysis in *National Video*, 610 F.Supp. at 627–28, was merely analogical. The holding in *National Video* was that Allen had stated a claim under the Lanham Act went to 15 U.S.C. § 1125(a), which deals with likelihood of confusion, not necessarily between trademarks.

11. Secondary meaning is sufficient, but not necessary, for recovery under § 368-d. *Markel v. Scovill Manufacturing Co.*, 471 F.Supp. 1244 (W.D.N.Y.), *aff'd mem.*, 610 F.2d 807 (2d Cir. 1979); *Orion Pictures Co. v. Dell Publishing Co.*, 471 F.Supp. 392 (S.D.N.Y.1979) (compiling cases).

12. "To call a mark distinctive is to imply that it is the product of arbitrariness or fancy." *P.F. Cosmetique*, 605 F.Supp. at 672. Though the stylized portraits of cartoon characters may be arbitrary or fanciful in this sense, the same cannot be said of the photographic likenesses of living persons.

meaning for trade dress).[13]

Thus, Allen's § 368–d claim essentially is one of unauthorized use of his likeness for commercial purposes. As such it is equivalent to a claim of violation of his right of publicity, and so is cognizable only under the New York Civil Rights Law, not the General Business Law. This claim must, therefore, be dismissed.

### Allen's Civil Rights Law Claim

Allen renews his contention that unauthorized use of Boroff's picture for commercial purposes violates his right to privacy under Civil Rights Law §§ 50–51. The difficulty with this contention is that the statute by its terms extends protection only to likenesses *of Allen,* and the Men's World photo is a photo of Boroff. In *National Video,* as noted, this court left open the question whether a photo of Boroff could be a "portrait or picture" of Allen for §§ 50–51 purposes, but noted that the applicable standard would be whether "most persons who could identify an actual photograph of [Allen] would be likely to think that this was actually his picture." *National Video,* 610 F.Supp. at 624. Here, we are confronted with the same question, but with the added twist that a disclaimer appears under the photo. In view of this difference, R & S argues that no reasonable person could find that the Men's

World ad contained a portrait or picture of Allen.

This novel and theoretically interesting argument would be worthy of more serious consideration than a 12(b)(6) motion allows, and would incline this court to treat the motion as one for summary judgment, reserving decision to permit the parties to make such further submissions as are contemplated by Rule 56 and this court's Local Rules, were it not for the fact that we need not decide the motion. The situation is parallel to that in *National Video,* where this court noted that Allen would be entitled to virtually identical relief under either a § 51 or a Lanham Act claim, and that he was entitled to summary judgment on his Lanham Act claim. In this case, which presents even more unusual facts than did *National Video,* under § 51 Allen would be able to obtain a prohibition against defendants representing that he had endorsed Men's World's products, relief available to him under the Lanham Act.[14] Similarly, the court holds that Allen's Lanham Act claim in this case withstands R & S's motion to dismiss, and, indeed, as in *National Video,* is one on which Allen is entitled to summary judgment.

### Allen's Lanham Act Claim

■ Allen's Lanham Act claim in this case is made under the same provision he

---

**13.** In *National Video,* Allen offered an affidavit at oral argument summarizing a marketing survey purporting to show that many consumers took the National Video ad to contain a photograph of Allen. *National Video,* 610 F.Supp. at 619 n. 3. This court declined to consider the survey because the parties did not have time to assess its methodology. In *National Video,* however, Allen at least offered empirical evidence for his claims; in the present case no empirical support whatever is offered for the proposition, which as a matter of law is an element of his § 368–d claim, that his likeness has acquired secondary meaning.

Even if Allen had established that his likeness has secondary meaning, to state a claim under § 368–d he would have to prove likelihood of dilution. *Sally Gee,* 699 F.2d at 625. In *Sally Gee* the Second Circuit endorsed a distinction between two kinds of dilution: "Junior uses may blur a mark's product identification or they may tarnish the affirmative associations a mark has come to convey." *Id.* (quoting 3 R. Callman, *The Law of Unfair Competition, Trademarks, and Monopolies* § 84.2, at 954–55 (foot-

note omitted)). Because Allen does not allege that Men's World sells inferior clothing, thereby tarnishing his mark, his theory is presumably one of blurring. This, however, requires a showing of "sufficient similarity between the two marks to show that the allegedly infringing mark is likely to blur plaintiff's mark." *Universal City Studios, Inc. v. Nintendo Co.,* 578 F.Supp. 911, 930 (S.D.N.Y.1983), *aff'd,* 746 F.2d 112 (2d Cir.1984). Allen has not made such a showing.

**14.** In *National Video,* we noted that typically in a § 51 case the successful plaintiff could obtain "an absolute injunction against the use of his picture, regardless of any perceived endorsement or lack thereof." 610 F.Supp. at 624–25. We went on to observe that "[o]n the unusual facts of this case, however, plaintiff would be limited to a prohibition against defendants representing that Boroff is actually Woody Allen." *Id.* at 625. In the present case, of course, there is already a disclaimer that Boroff is Allen; the further relief sought, and obtainable, is a disclaimer that Allen endorses the product.

invoked in *National Video*, 15 U.S.C. § 1125(a).[15] R & S must therefore distinguish this case on its facts from *National Video*, in which Allen's § 1125(a) claim was upheld.

R & S fails in this endeavor. Its principal argument is that unlike the defendants in *National Video*, Men's World is not in competition with Allen, and "[t]he statute is directed against unfair competition. To be actionable, conduct must not only be unfair but must in some discernible way be competitive." *Halicki v. United Artists Communications, Inc.*, 812 F.2d 1213, 1214 (9th Cir.1987). So it must, but as this court and our Court of Appeals have many times made clear, the operative word is "discernible," not "competitive."

Thus, in *National Video* itself, we held that "[t]here is no requirement under the [Lanham] Act that plaintiff and defendant actually be in competition." 610 F.Supp. at 628. It was sufficient that National Video's *audience* of movie watchers was "the same audience to which plaintiff's own commercial efforts are directed." *Id.* And in one of this court's most seminal, widely cited cases on § 1125, Judge Griesa wrote:

> There is no requirement that the defendant's service or product be in direct competition with, or be of the same type as, the product or service of the plaintiff. The owner of a service mark or trademark basically has the right, as far as commercial exploitation is concerned, to have that mark associated with *his* services and goods, rather than with the services or goods of another person. This is true whether or not the party who misappropriates the mark deals in competing or non-competing services or goods.

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 467 F.Supp. 366, 374 (S.D.N.Y.), *aff'd*, 604 F.2d 200 (2d Cir. 1979).[16] Thus, all that is required for Allen to state a claim under § 1125(a) is a false representation that Men's World's products are associated with him—that they are "*his* services and goods." R & S's argument must, therefore, be rejected, and Allen's Lanham Act claim allowed to stand.

Not only to stand, but to prevail. As in *National Video*, this court's analysis of likelihood of confusion in an § 1125(a) case is guided by the six factors suggested by the Second Circuit in *Standard & Poor's Corp. v. Commodity Exchange, Inc.*, 683 F.2d 704, 708 (2d Cir.1982). The status of the first two *Standard & Poor's* factors— the strength of plaintiff's "mark" and its similarity to defendant's "mark"—remains unchanged from *National Video*. Allen remains well known and Boroff continues to resemble him strongly. The third factor, proximity of the products, requires a slightly different treatment than in *National Video*, in which Allen's identification with movies and National Video's operation of video rental stores marked off a common audience of movie watchers. Here, we begin with the proposition that there is at least an overlap between the Men's World audience of purchasers of discount clothing and Allen's audience of movie watchers. It is to the *intersection* of these audiences that Men's World is appealing, by placing an ad containing a picture of Boroff in a periodical that also regularly publishes movie theatre schedules, display ads for Allen's films, and other features

---

**15.** 15 U.S.C. § 1125(a) provides, in pertinent part:

> Any person who shall affix, apply, or annex, or use in connection with any goods or services ... a false designation of origin, or any false description or representation ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

**16.** Although Judge Griesa held in *Dallas Cowboys Cheerleaders* that that group of cheerleaders had a valid common law trademark in its uniform, that holding does not affect the present discussion. *Dallas Cowboys Cheerleaders* is an § 1125(a) case; in the passage quoted Judge Griesa specifically holds that direct competition is not an element of an § 1125(a) claim; and he earlier specifically observes that "[t]o recover for a violation of [§ 1125(a) ], it is not necessary that there be a registered trademark or service mark." *Dallas Cowboys Cheerleaders*, 467 F.Supp. at 373 n. 2. Thus the present case cannot be distinguished from *Dallas Cowboys Cheerleaders* on the ground that one does not involve a trademark, whereas the other does.

intended to appeal to moviegoers in general and Allen's fans in particular. Men's World has brought its products into proximity with Allen's by appealing to a particular subaudience, that of Allen fans who buy bargain clothing.

As in *National Video,* the fourth factor, evidence of actual confusion, is probative of likelihood of confusion but not required. With respect to the fifth factor, sophistication of the audience, defendants here stand worse than in *National Video,* where the advertising venue was *Video Review,* a magazine targeted at video consumers whose sophistication weighed, to some degree, against likelihood of confusion. *Newsday,* by contrast, is a general-interest tabloid daily newspaper circulated throughout the New York City metropolitan area; as one of the area's four major metropolitan dailies, it necessarily aims for the widest possible circulation, and so its readers' sophistication about film must be presumed to be less than that of *Video Review*'s readers.

Finally, *Standard & Poor's* bids the court to consider the good or bad faith of the defendants. In this connection, the court has reviewed the hearing on the contempt order in *Allen II* conducted on June 5, 1986, as well as the affidavit of Howard Blasberg ("Blasberg Aff."), Director of Operations of Ron Smith Celebrity Look–Alikes, docketed in this court on June 2, 1986. The Blasberg affidavit makes clear that R & S knew of *National Video;* it consists largely of an account of conversations between Blasberg and Sheila Kauvar of R & S involving the placement and character of the disclaimer required by *National Video.*[17] The most important such conversations are the following.

First, after Ms. Kauvar sent layouts indicating the placement of the disclaimer, Blasberg affirms:

> I told her again that in the lawsuit brought by Woody Allen, the Court had said that there must be a clear and conspicuous disclaimer. I stressed that the disclaimer had to be clear and concise

and legible. I told her that their proposed placement of the disclaimer at the bottom of the page was no good. I told her to put the disclaimer directly under the picutre in the middle of the page. In addition, I instructed her that the disclaimer would have to be bold enough so that anyone who saw the ad would see it. She agreed to make this change.

Blasberg Aff. ¶ 7. Later, Blasberg affirms,

> I told her I was concerned that the disclaimer be in large enough and bold enough type to be clear, conspicuous and legible so that anyone who saw the advertisement would see the disclaimer. She told me that in fact the art director at the advertising agency had asked if he could move the disclaimer, because it was too obvious where it was, and it was the first thing people would read. I told her that because of the Woody Allen case the disclaimer must be obvious, and they could not move it. She promised that it would remain right under the photograph in the center of the advertisement.

*Id.* ¶ 9. Thus, the Blasberg affidavit shows that R & S was aware of the existence of the *National Video* litigation and of the existence of this court's order in that litigation. It does not show that Smith transmitted a copy of the order to R & S; at best it establishes that Smith, through its agent Blasberg, informed R & S of the requirements of the order in a general way. More particularly, the Blasberg affidavit does not demonstrate that R & S was aware of the ambiguity in the order that allowed Smith and Boroff to escape contempt in *Allen II.* When Blasberg speaks of "the disclaimer," he means the advertising copy "This is a Ron Smith Celebrity Look–Alike." This court, at the June 5, 1986 hearing, required that this language be supplemented by a disclaimer that Allen endorsed Men's World's products and services. The Blasberg affidavit does not demonstrate that R & S knew that the spirit of the court's order, as has been explained, was that such language be included. Thus, at a minimum, the same

---

**17.** Paragraphs 2 and 3 of the Blasberg affidavit affirm that Blasberg had conversations with Ribaudo and Schaefer in which they express their knowledge of the need for a disclaimer without mentioning Allen or *National Video.*

"weak but colorable" argument that led this court, reluctantly, to acquit Smith and Boroff of contempt is available to R & S to show its lack of bad faith. R & S can argue that they did not willfully violate Allen's right under § 1125(a) to be free of false suggestions that he has endorsed a product or service, because they were unaware that, according to the spirit of the order, the disclaimer they used was, as a matter of law, insufficient to dispel such suggestions. Indeed, what was said of the good or bad faith of the defendants in *National Video* can be repeated of the defendants here:

> While plaintiff has not established that defendants acted intentionally to fool people into thinking that plaintiff actually appeared in the advertisement, defendants admit that they designed the advertisement intentionally to evoke an association with plaintiff. They must therefore at least have been aware of the risk of consumer confusion, which militates against a finding that their motives were completely innocent. Defendants may not have intended to imply that plaintiff actually endorsed their product, but they happily risked creating that impression in an attempt to gain commercial advantage through reference to plaintiff's public image.

*National Video*, 610 F.Supp. at 628.

Thus, taking the *Standard & Poor's* factors into account, this court is led, as it was in *National Video*, "to the inescapable conclusion that defendants' use of Boroff's photograph in their advertisement creates a likelihood of consumer confusion over plaintiff's endorsement or involvement." *Id.* Neither party's submissions bring to this court's attention any difference between the Men's World advertisement, the subject of *Allen II*, and the *National Video* advertisement sufficient to raise a genuine issue of *material* fact in this case. This court remarked, informally, at the *Allen II* contempt hearing that the Men's World ad created a likelihood of consumer confusion.[18] Now that the question has arisen directly, our application of the *Standard & Poor's* factors leads to the same conclusion, as a matter of law.

Since 1961, when Judge Medina went out of his way to recant his earlier views,[19] it has been quite firmly established in this Circuit that a district court can grant summary judgment sua sponte to a nonmoving party if no genuine issues of material fact appear. *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983); *Lowenschuss v. Kane*, 520 F.2d 255, 261 (2d Cir.1975). The court holds that this is exactly such a case, and that it is both within the court's power and appropriate to grant Allen summary judgment on his Lanham Act claim.[20]

## Allen's Other Requests for Relief

In addition to an injunction, Allen seeks the following kinds of relief:

---

18. *See* note 6 *supra*. *See also, e.g.*, Hearing Transcript at 39:

> THE COURT: But [the advertisement, even though it was for a product unrelated to movies and carried the "This is a Ron Smith Celebrity Look–Alike" "disclaimer," is] still carrying the Woody Allen aura by use of the language, "Men's Fashion World made me a sex symbol," when he obviously is not, and that is Woody Allen's theme, if he has a theme at all.
>
> Even I know that, and I have only seen one Woody Allen picture in my whole life. But that is where he is coming from, as they say; he is not a sex symbol. So this is right out of Woody Allen, and the clarinet, as I have indicated, he is playing now could mislead any reasonable consumer. No question about it.

19. *Local 33, International Hod Carriers v. Mason Tenders District Council*, 291 F.2d 496, 505 (2d Cir.1961).

20. The court here observes briefly that certain technical objections to so proceeding are inapposite. The Second Circuit cases cited all involve summary judgment against a party that has moved for summary judgment, and R & S has not done so here. However, R & S has made two motions pursuant to Rule 12(b)(6), one on the grounds of former adjudication, the other for failure to state a claim. Of course, a Rule 12(b)(6) motion converts to a Rule 56 motion when the movant goes beyond the pleadings; and although R & S offered exhibits only for its res judicata/collateral estoppel motion, once the court construed that motion as a Rule 56 motion and denied it, those exhibits remained before the court to consider in deciding the 12(b)(6) substantive motion, encompassing the motion to dismiss Allen's Lanham Act claim. Thus, it is appropriate for the court to consider the substantive motion as a Rule 56 motion as well.

1. Compensatory damages in an amount to be determined by the jury. Compensatory damages are available in a Lanham Act case only on a showing of actual consumer confusion, whereas equitable relief requires only a showing of likelihood of confusion. *See, e.g., Hesmer Foods, Inc. v. Campbell's Soup Co.,* 346 F.2d 356, 359 (7th Cir.), *cert. denied,* 382 U.S. 839, 86 S.Ct. 89, 15 L.Ed.2d 81 (1965). Allen has not made a showing of actual consumer confusion, and the disposition of this case makes a jury trial unnecessary. The court will not, therefore, grant this relief.

2. Five million dollars in punitive damages. Punitive damages have been held not to be recoverable in Lanham Act cases. *Electronics Corporation of America v. Honeywell, Inc.,* 358 F.Supp. 1230, 1235 (D.Mass.), *aff'd,* 487 F.2d 513 (1st Cir.1973), *cert. denied,* 415 U.S. 960, 94 S.Ct. 1491, 39 L.Ed.2d 575 (1974).

3. Attorney's fees. In 1975 Congress amended 15 U.S.C. § 1117 to allow recovery of attorney's fees in "exceptional cases" in Lanham Act actions. Exceptional cases have generally been held to be such as involve fraud or bad faith. *See, e.g., Safeway Stores, Inc., v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1169 (11th Cir. 1982). Because this court declined to find that there is evidence of fraud or bad faith on defendants' part in this case, it declines in its discretion to award Allen attorney's fees.

4. An accounting of profits derived from the advertisement. Although our Court of Appeals has long permitted an accounting in Lanham Act cases even where there is no direct competition between products, *see, e.g., W.E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656, 664 (2d Cir. 1970), its policy justification has been deterrence:

It is essential to deter companies from willfully infringing a competitor's mark, and the only way the courts can fashion a strong enough deterrent is to see to it that a company found guilty of willful infringement shall lose *all* its profits from its use of the infringing mark.

In the circumstances of this case, however, this court concludes that a permanent injunction is a sufficient deterrent to provide Allen with complete relief.[21]

## CONCLUSION

In summary, then, defendants' motions to dismiss on the grounds that this case is res judicata and of collateral estoppel are DENIED;

Defendant R & S's motion to dismiss Allen's common law unjust enrichment claim is GRANTED;

R & S's motion to dismiss Allen's dilution claim under N.Y.Gen.Bus.L. § 368–d is GRANTED;

The court DECLINES TO REACH R & S's motion to dismiss Allen's claim under N.Y.Civ.Rights L. §§ 50–51;

R & S's motion to dismiss Allen's claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is DENIED.

With respect to Allen's Lanham Act claim, this court finds that there are no disputed issues of material fact and that Allen is entitled to judgment as a matter of law, and consequently under Fed.R.Civ.P. 56 GRANTS SUMMARY JUDGMENT on that claim, with relief as described in the Order that accompanies this Opinion.

## ORDER

In conformity with the opinion filed simultaneously herewith,

Defendants' motions to dismiss on the grounds that this case is res judicata and of collateral estoppel are DENIED;

Defendant Ribaudo & Schaefer (R & S)'s motion to dismiss Allen's common law unjust enrichment claim is GRANTED;

---

21. The court recognizes that the *Bassett* court held that "An accounting should be granted if the defendant is unjustly enriched, if the plaintiff sustained damages from the infringement, or if an accounting is necessary to deter a willful infringer from doing so again." 435 F.2d at 664. Here, however, there is no evidence of unjust enrichment or damages. Thus deterrence is not only the primary but the sole justification for ordering an accounting.

**372**

R & S's motion to dismiss Allen's dilution claim under N.Y.Gen.Bus.L. § 368–d is GRANTED;

This court DECLINES TO REACH R & S's motion to dismiss Allen's claim under N.Y.Civ.Rights L. §§ 50–51;

R & S's motion to dismiss Allen's claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is DENIED; treating that motion as one for summary judgment under Fed.R.Civ.P. 56, this court GRANTS SUMMARY JUDGMENT as to Allen's claim of liability under the Lanham Act;

It is ORDERED that defendants, insofar as is applicable, be enjoined from engaging in any of the practices creating a likelihood of consumer confusion that were enjoined in this court's June 25, 1986 amended order in *Allen v. National Video, Inc.,* No. 84 Civ. 2764 (CBM) [Available on WESTLAW, 1986 WL 7270].

SO ORDERED.