**Chef Paul PRUDHOMME and Tasso Travel, Inc.**

v.

**The PROCTER & GAMBLE CO. and The Folgers Coffee Co.**

No. 92–1049.

United States District Court, E.D. Louisiana.

Sept. 14, 1992.

William H. Reinhardt, Post & Reinhardt, Metairie, La., for plaintiffs.

Charles F. Gay, Jr., Joseph W. Looney, Sarah T. Eckstein, Adams & Reese, New Orleans, La., Jeffrey O. Davidson, The Procter & Gamble Co., Cincinnati, Ohio, for defendants.

## MEMORANDUM AND ORDER

SEAR, Chief Judge.

Plaintiffs Chef Paul Prudhomme and Tasso Travel, Inc. have brought this civil action claiming multiple violations of trademark infringement, invasion of privacy, and unfair competition resulting from a television commercial aired by defendants Procter & Gamble Company and Folgers Coffee Company. In their amended complaint, plaintiffs claim that the commercial depicts an actor bearing a striking resemblance to Prudhomme advocating defendant's coffee product, that plaintiffs never consented to the commercial, and that the commercial suggests Prudhomme's sponsorship or approval of the product to the detriment of plaintiffs.

Defendants filed a Motion to Dismiss or for a More Definite Statement. They claim that plaintiffs fail to allege a claim upon which relief can be granted for any of the alleged violations. As an alternative to dismissal, defendants ask for a more definite statement by plaintiffs of their claims to enable defendants to adequately address the plaintiffs' allegations.

### I. The Motion to Dismiss:

In considering a defendant's motion to dismiss, the well-pleaded allegations of the plaintiffs' complaint must be taken as true. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–49, 15 L.Ed.2d 247 (1965). The complaint's allegations "should be construed favorably to the pleader," *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and it should not be dismissed for failure to state a claim unless there is no doubt that the plaintiffs can prove no set of facts which would entitle them to relief, *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In addition, the requirement of Fed.R.Civ.P. 8(a) of a short, plain statement of the claim applies to trademark infringement and unfair competition claims. The federal courts apply this standard liberally to discourage unnecessary motion practice in these cases. *See* 5 Charles Wright & Arthur Miller, *Federal Practice and Procedure,* § 1237 (1990).

### A. Lanham Act Claims: False Advertising and Trademark Infringement (Counts 1 and 2)

Plaintiffs' amended complaint alleges violations of two sections of the Lanham Act: § 43(a) involving false or misleading advertising (15 U.S.C. § 1125(a)(1)); and § 32(1) involving trademark infringement (15

U.S.C. § 1114(1)). Courts addressing motions to dismiss allegations of Lanham Act violations generally consider the sufficiency with which the complaint alleges two main factors. First and foremost in Lanham Act cases is the "likelihood of confusion" of consumers. *Sno–Wizard Mfg, Inc. v. Eisemann Products Co.*, 791 F.2d 423, 425 (5th Cir.1986); *Fuji Photo Film v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591 (5th Cir.1985). Secondly, there must be a showing that the "mark" claimed by plaintiffs to have been improperly used is one properly protected under the Act. Defendants claim that plaintiffs have failed to sufficiently allege either of these factors.

This case is unusual because it deals with defendants' alleged use of a Prudhomme "look-alike," a claim which separates this cause of action from most Lanham Act cases which generally deal with the misuse of a symbol or word. Claims involving the use of look-alikes touch on a relatively new area in Lanham Act suits, one which the Fifth Circuit has not yet addressed. However, there is a smattering of cases covered in the Second Circuit that have adopted a framework for addressing the problems involving look-alikes which is appropriate for use here.

■ The heart of a successful claim based on either § 32(1) or § 43(a) of the Lanham Act involves a showing of "likelihood of confusion" as to the source or sponsorship of defendants' products. *See Louisiana World Exposition, Inc. v. Logue*, 746 F.2d 1033 (5th Cir.1984) (false advertising); *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178 (5th Cir.1980) (trademark infringement). Most cases addressing this issue consider six factors:[1] (1) the strength of plaintiff's marks; (2) the similarity of plaintiff's and defendant's marks; (3) the proximity of plaintiff's and defendant's products; (4) evidence of actual confusion as to source or sponsorship; (5) sophistication and identity of the defendant's audience; and (6) defendant's good or bad faith. *See Louisiana World Exposition, Inc. v. Logue*, 746 F.2d at 1040; *Fuji Pho-*

*to Film v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d at 597–98. The plaintiff need not prove a majority of these factors to establish a "likelihood of confusion." *Louisiana World Expo v. Logue*, 746 F.2d at 1040. In dealing with look-alikes, however, several district courts in New York have noted that these factors must be slightly modified because the allegation involves the imitation of a plaintiff's entire person rather than the imitation of a static image or picture on a product.

■ The district courts in *Allen v. National Video, Inc.*, 610 F.Supp. 612, 627–28 (S.D.N.Y.1985) and *Tin Pan Apple, Inc v. Miller Brewing Co.*, 737 F.Supp. 826 (S.D.N.Y.1990) used the following analysis in modifying the six-factor "likelihood of confusion" test to accommodate look-alike cases. The first factor referring to the strength of plaintiff's mark was equated with the extent to which the plaintiff has developed a favorable association of his mark in the public's eye. "Mark" in this context means the plaintiff's name and likeness. The second factor questioning the similarity between the plaintiff and defendant marks was modified to compare the similarity of the plaintiff with the individual used by the defendant. The third factor involving proximity of the plaintiff's and defendant's products was changed to consider the involvement of the plaintiff in the area being advertised by the defendant. The courts noted that there is no requirement that the plaintiff and defendant be in actual competition. The fourth, fifth, and sixth factors remained largely the same.

■ The plaintiffs in this case have alleged sufficient facts to satisfy the six-factor "likelihood of confusion" test according to this modified analysis. First, plaintiffs' claim that Prudhomme is famous for popularizing cajun-style cuisine and for his restaurants, cookbooks, and food-related products and services. *See* complaint ¶ 7. Second, plaintiffs claim that the "look-alike" actor used in defendants' commercial bears a "strong resemblance" to Prudhomme, due to the actor's portly build,

---

**1.** These factors are not identical in each case, but the substance is primarily the same.

dark hair and full dark beard, facial features, and apparel including a white cap and bandana. Plaintiffs claim that all these features are generally associated with plaintiff Chef Paul Prudhomme. *See* complaint ¶ 12. Third, plaintiffs assert that the area being advertised is one Prudhomme is involved in, because the commercial is one in a series portraying restauranteurs "switching" instant coffee on their patrons, and Prudhomme is a famous restauranteur. *See* complaint ¶ 25. Fourth, plaintiffs have alleged actual confusion as to Prudhomme's sponsorship of defendant's coffee. *See* complaint ¶ 14. Finally, plaintiffs allege bad faith on defendant's behalf, claiming defendants' were attempting to capitalize on Prudhomme's image without plaintiffs' consent. *See* complaint ¶ 26.

In opposition to plaintiffs' Lanham Act allegations, defendants first claim that there can be no finding of a "likelihood of confusion," because they state that the commercial "clearly identifies" the chef portrayed in the commercial as someone other than Prudhomme.[2] Plaintiffs dispute this assertion, claiming that the identification is ambiguous. This "identification" issue is similar to the disclaimer issue addressed in other look-alike cases, in which disclaimers state that the look-alike is not the actual celebrity. The mere existence of a disclaimer will not preclude a finding of consumer confusion. *See Allen v. National Video, Inc.* 610 F.Supp. at 629 (disclaimer inadequate to prevent consumer confusion as a matter of law). The disclaimer should be carefully analyzed in determining effectiveness. *See Estate of Presley v. Russen*, 513 F.Supp. 1339, 1377–78 (D.N.J. 1981). The clarity of the identification in this case does not seem amenable to resolution at this early stage of the proceedings.

Defendants further claim that any alleged use of Prudhomme's "likeness" by defendants is not actionable under the Lanham Act because it is not a proper protectible image. To be protectible, a mark must be shown either to be "distinctive" or to have derived a "secondary meaning." *See Sno–Wizard Mfg, Inc. v. Eisemann Products Co.*, 791 F.2d at 425. Defendants claim that a person's "likeness" cannot be shown either to be a distinctive mark, or to have acquired any secondary meaning. Defendants' attack should fail for two reasons. First, all look-alike claims necessarily involve allegations of improper use of one's likeness; the fact that there have been successful look-alike claims, *see Allen v. National Video, Inc.*, 610 F.Supp. at 630 (granting plaintiff summary judgment on his Lanham Act claims), argues against the defendants' generalized statement that protection of a "likeness" is improper under the Lanham Act.

Second, plaintiffs have alleged enough facts to support a showing that Prudhomme's likeness may well be a protectible image under traditional trademark law. There is case law which states that a person's general appearance may not be sufficiently "distinctive" to satisfy the Act. *Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir.1990); *Allen v. Men's World Outlet, Inc.*, 679 F.Supp. 360, 366 (S.D.N.Y. 1988). These findings rest on the assumption that a real person's image or likeness is no more distinctive than any other person's.[3] However, these findings do not preclude the plaintiffs from showing that Prudhomme's "likeness" has derived secondary meaning, defined as an acquired distinctiveness from extensive use by a single supplier. *See Allen v. Men's World*

---

**2.** Defendants state that the chef character in the commercial looks like, and is "identified" as, one Ed Merrigan. Thus, they claim that any similarity to any other character, including Prudhomme, is purely coincidental. *See* P & G motion to dismiss, at 17. This claim becomes questionable when viewed in light of a newspaper article which plaintiffs claim the defendants sent to them in response to plaintiffs' inquiry of who Ed Merrigan was: the article states that

Merrigan is a Paul Prudhomme look-alike. *See* complaint ¶ 17.

**3.** There are two caveats to these findings: (1) the *Pirone* court noted a person's photo consistently used on a certain product can become a protectible trademark under the Act; (2) these cases distinguished the likenesses of real persons from those of fictional characters, which were found to be protectible.

*Outlet, Inc.*, 679 F.Supp. at 366.[4] In their complaint, plaintiffs allege facts supporting a finding of secondary meaning, which is sufficient to withstand dismissal of their claim under the Lanham Act.

 Defendants' final attack on plaintiffs' Lanham Act allegations involves § 32(1), which defendants' claim requires an allegation of unauthorized use of a *registered* trademark. There seems to be some question as to whether plaintiffs have registered, or would be able to register, Prudhomme's "likeness" in any form beyond the static image of his face.[5] In any event, defendant's statement that registration is a prerequisite to protection under § 32(1) is an incorrect statement of the law. While registration may provide a presumption of protection under the Act, *TNT, Ltd. v. TNT Messenger Service, Inc.*, 724 F.Supp. 201 (S.D.N.Y.1989), certain marks will be protected by the courts even if they are not registered. *Lucien Lelong, Inc. v. Dana Perfumes, Inc.*, 138 F.Supp. 575 (D.Ill.1955). The necessary showing is that the mark be either "distinctive," or have acquired a secondary meaning.

Plaintiffs' allegations in their amended complaint satisfy a showing of both "likelihood of confusion" and protectible image, the necessary elements for both their Lanham Act claims, and withstand defendants' motion for dismissal.

**B.** *Trademark Infringement and Unfair Trade Practices under Louisiana Law:* (Counts 3 and 5)

 Defendants correctly note that the requirements for trademark infringement and unfair trade practices under state law mirror those of the Lanham Act. *See* La.

Rev.Stat. § 51:211 et seq. (trademark infringement); La.Rev.Stat. § 51:1401 et seq. (unfair trade practices); *Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.*, 725 F.2d 336, 343 n. 6 (5th Cir.1984) ("likelihood of confusion is required explicitly by the Louisiana trademark statute"). Because plaintiffs have satisfied the Lanham Act requirements, their complaint withstands dismissal under these state claims as well.

**C.** *Louisiana Anti–Dilution Law:* (Count 4)

 Defendants note that the anti-dilution statute protects a mark based upon its strength, *See* La.Rev.Stat. § 51:223.1; P & G Mem p. 22, and that such strength can be demonstrated by showing a mark to either be distinctive or to have acquired a secondary meaning. Because plaintiffs adequately allege facts supporting such a finding, as reviewed *supra* under the Lanham Act discussion, their claim of violation of the anti-dilution law withstands dismissal.

**D.** *Common Law Right of Privacy and Publicity Claims:* (Counts 6, 7, and 8)

 Plaintiff Prudhomme claims that defendants violated his right to privacy by misappropriating Prudhomme's likeness, placing him in a false light, and infringing upon Prudhomme's right to control the publicity of his likeness. Plaintiffs' complaint sufficiently alleges facts to support the misappropriation and false light claims. Defendants' opposition merely attacks the sufficiency of the allegations, an attack which is premature.

 With regard to infringement of the right to publicity, defendants claim that

---

**4.** In fact, the *World Outlet* court specifically stated that the plaintiff in that case was free to establish that his likeness had indeed acquired a secondary meaning. However, the plaintiff had only asserted that his likeness had acquired secondary meaning, without pointing to any specific evidence. He therefore failed the "vigorous evidentiary requirements" of proving a secondary meaning. *Allen v. Men's World Outlet,* 679 F.Supp. at 366.

**5.** Plaintiffs' complaint states that "Prudhomme has registered his name and likeness as trade-

marks on the principal register of the United States Patent and Trademark Office." Complaint ¶ 9. Further, plaintiffs have provided as an appendix to their complaint a copy of a trademark of Prudhomme's face and outfit, and claim that this is a trademark of Prudhomme's "likeness." Defendants counter that such a trademark of Prudhomme's face in a static pose differs markedly from a trademark of his entire "likeness" as a person, and that such a likeness is impossible to register.

this right has not been recognized in Louisiana. They claim that the right of privacy encompasses only four interests in this state: (1) misappropriation of an individual's name or likeness; (2) intrusion on solitude or seclusion; (3) false light; and (4) unreasonable disclosure of embarrassing private facts. *Jaubert v. Crowley Post–Signal, Inc.*, 375 So.2d 1386, 1388 (La. 1979). In response, plaintiffs claim that other jurisdictions have recognized this right as a "special branch" of the right to privacy, *see Stephano v. News Group Publications, Inc.*, 64 N.Y.2d 174, 183, 485 N.Y.S.2d 220, 474 N.E.2d 580 (1984), and that it is recognized by the Restatement (2d) of Torts § 652C, Comment b (1977). While Louisiana courts have not explicitly adopted this right, they have not specifically precluded it, either. Plaintiffs have made a good faith argument for extension of the law in Louisiana on this topic, and should not be prevented from presenting an argument on this issue at this early stage in the proceedings.

### E. *Abuse of the Right to Advertise:* (Count 9)

■■■ Under Louisiana law, plaintiffs are entitled to injunctive relief if the defendants' acts are: (1) intentionally harmful; (2) contain no serious and legitimate interest; (3) are contrary to moral rules, good faith or elementary fairness; or (4) rights are exercised for purposes other than those which the rights were granted. *See* La. Civ.Code art. 2315 (the statute used by Louisiana courts to incorporate the common law right to privacy); *Illinois Central R.R. Co. v. Int'l Harvester Co.*, 368 So.2d 1009 (La.1979). Plaintiffs have alleged sufficient facts to support a showing of violation of this law, so the complaint withstands dismissal on this point.

### F. *Legal Fault for Breach of Duty:* (Count 10)

■■ Plaintiffs base a separate cause of action on defendants' legal fault in breaching La.Civ.Code art. 2315. The statute itself is a general duty and liability statute which states that, "[e]very act whatever of man that causes damage to another obliges

him by whose fault it happened to repair it." In their complaint, plaintiffs allege facts of damage, and link the occurrence of that damage to defendants. While the complaint is not specific on these points, it contains all the information that is required. According to *Spencer–Wallington, Inc. v. Service Merchandise, Inc.*, 562 So.2d 1060 (La.App. 1st Cir.), *writ denied* 567 So.2d 109 (La.1990), a pleading asserting a cause of action can be fairly vague: "the courts of this state demand only a pleading setting forth the facts upon which relief may be granted." *Id.* at 1064. Thus, plaintiffs' final cause of action advanced against defendants survives dismissal.

### II. *Motion for a More Definite Statement:*

■■■ Finally, defendants have asked the court to grant their motion for a more definite statement against plaintiffs. The Fed.R.Civ.P. 12(e) motion for a more definite statement is disfavored. *Mitchell v. E–Z Way Towers, Inc.*, 269 F.2d 126 (5th Cir.1959). It is universally deemed appropriate only when the pleading addressed is so vague it cannot be responded to. 5A Charles Wright and Arthur Miller, *Federal Practice and Procedure* § 1377 (1990). Here defendants have proven, in both their 27 page Motion for Dismissal and their 13 page Reply to plaintiffs' response, that the complaint can indeed be responded to.

Accordingly,

The motion to dismiss and for a more definite statement submitted by defendants Procter & Gamble Company and Folgers Coffee Company is DENIED as to all counts of the complaint.